# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> THE STATE OF NEW MEXICO, *ex rel* ) <br> LA FRONTERA CENTER, INC., an ) <br> Arizona Nonprofit Corporation, RELATOR, ) <br>         ) <br>         Plaintiffs,         ) <br>         ) <br>         v.         ) <br>         ) <br> UNITED BEHAVIORAL HEALTH, INC., ) <br> *et al.*,         ) <br>         ) <br>         Defendants.         ) <br>         ) <br>         ) <br> _____         ) | 15cv1164- MV-WPL [Under Seal] <br><br><br><br> FILED UNDER SEAL |

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Judge Vazquez referred the Relator's Application for Order to Show Cause and for Sanctions (Doc. 18) to me.[1] (Doc. 34.) I held a hearing in this matter and ordered supplemental briefing from the Relator, the United States, the New Mexico Attorney General's Office ("NMAG"), and the New Mexico Human Services Department ("HSD"). (*See* Doc. 32.) The Plaintiffs seek sanctions and other relief against HSD for breaching the seal in this case. The specific factual circumstances of this alleged breach of the seal is without precedent. Having reviewed the record, the briefing, the relevant law, and being otherwise fully advised in these

---

[1] HSD correctly argues that the referral Magistrate Judge may not be designated to rule on motions for injunctive relief, pursuant to 28 U.S.C. § 636(b)(1)(A). However, § 636(b)(1)(B) allows Judge Vazquez to refer these matters to me for proposed findings of fact and recommendations for the disposition. To the extent that HSD challenges my authority to address these matters, HSD is incorrect because of § 636(b)(1)(B). Additionally, the motion at issue here does not seek "injunctive relief" as contemplated in § 636(b)(1)(A)—that is, final relief in lieu of monetary compensation in a civil case; rather the Plaintiffs seek sanctions against HSD and an order resolving specific behavior in the context of an ongoing case, akin to sanctions for discovery violations.

matters, I recommend that the Court deny the Relator's request for attorney's fees and grant sanctions and/or other relief against HSD to compensate for HSD's breach of the seal.

## FACTUAL AND PROCEDURAL BACKGROUND

The Relator filed this "reverse false claims" qui tam action on December 23, 2015, on behalf of the United States and the State of New Mexico, alleging that the Defendants violated the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq.; the New Mexico Fraud Against Taxpayers Act ("NMFATA"), N.M. STAT. ANN. §§ 44-9-1 through 44-9-14; the New Mexico Medicaid False Claims Act ("NMMFCA"), N.M. STAT. ANN. §§ 27-14-1 through 27-14-14; and the New Mexico Medicaid Fraud Act ("NMMFA"), N.M. STAT. ANN. §§ 30-44-1 through 30-44-8. (Doc. 1.) The same day, the Relator served a copy of the complaint on the United States Attorney for the District of New Mexico, the Attorney General of New Mexico, and the Secretary of HSD. (Doc. 2.)

On February 23, 2016, HSD filed with the Court, under seal, its Report of its investigation of the Complaint. (Doc. 15.) On February 26, 2016, HSD served a copy of its Report on the Defendants. (Doc. 18-1 at 2.) While HSD restricted its "investigation to the allegations related to the [NMMFCA]" (Doc. 21 at 9 (Aff. Lisa Hahn-Cordes)), the acts underlying the NMMFCA claim are the same as those underlying the FCA claim (*see* Doc. 1 at 40).

The Relator filed its Application for Order to Show Cause and for Sanctions on March 4, 2016. (Doc. 18.) I received briefing from the Relator, the United States, the NMAG, and HSD. I then held a hearing on the matter and accepted additional briefing.

## LEGAL BACKGROUND

The FCA specifically provides that the "district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transactions or occurrence as an action brought

under [31 U.S.C. §] 3730." 31 U.S.C. § 3732(b). All qui tam actions brought under the FCA, the NMFATA, and the NMMFCA must be filed under seal. 31 U.S.C. § 3730(b)(2); N.M.S.A. § 44-9-5(B); N.M.S.A. § 27-14-7(C).[2] All three statutes provide an initial, mandatory seal of at least sixty days, and prohibit service of the complaint upon or other notification to the defendants until the expiration of the seal and any extensions granted by the court. 31 U.S.C. § 3730(b)(2); N.M.S.A. § 44-9-5(B); N.M.S.A. § 27-14-7(C).

The FCA specifically prohibits service upon a defendant in a qui tam action "until the court so orders." 31 U.S.C. § 3730(b)(2). Furthermore, when a

> State or local government is named as a co-plaintiff with the United States in an action brought under [31 U.S.C. § 3732(b)], a seal on the action ordered by the court under section 3730(b) shall not preclude . . . [service of] the complaint, any other pleadings, or the written disclosure of substantially all material evidence and information possessed by the person bringing the action on the law enforcement authorities that are authorized under the law of that State or local government to investigate and prosecute such actions on behalf of such governments, except that such seal applies to the law enforcement authorities so served to the same extent as the seal applies to other parties in the action.

31 U.S.C. § 3732(c). The qui tam provisions of the FCA were heavily amended in 1986 with the "overall intent . . . to encourage more private enforcement suits." S. REP. NO. 99-345, 99th Cong., 2d Sess., at 23-24 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5288-89. The seal exists "to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action." *Id.* at 24.

Unlike the FCA and the NMFATA, the NMMFCA directs HSD to "conduct an investigation of the factual allegations and legal contentions made in the complaint[ and] make a written determination of whether there is substantial evidence that a violation has occurred[, and]

---

[2] It does not appear that the NMMFA specifically authorizes qui tam actions and therefore does not implicate a seal in this instance. *See* N.M.S.A. §§ 30-44-1 through 30-44-8.

provide the person against which a complaint has been made with a copy of the determination" within sixty days of receiving the complaint. N.M.S.A. § 27-14-7(C); *compare id. with* 31 U.S.C. § 3730(b) and N.M.S.A. § 44-9-5(B).

## DISCUSSION

There are six issues at this point: 1) Does the Court have jurisdiction over the motion for sanctions and HSD?; 2) Is HSD bound by the FCA seal?[3]; 3) If HSD is bound by the seal, did HSD breach the seal and violate the FCA?; 4) If HSD did breach the seal, was the breach justified?; 5) If the breach was not justified, are sanctions or other relief appropriate?; and 6) If sanctions or other relief are appropriate, what sanctions or other relief should the Court impose? I recommend that the Court: 1) conclude that it has jurisdiction over the motion and over HSD; 2) determine that HSD is bound by the FCA seal; 3) find that HSD breached the seal by disclosing the existence of the qui tam action to the Defendants; 4) conclude that HSD's breach of the seal was not justified; 5) find that sanctions or other relief are appropriate; and 6) adopt the United States's recommendations as to sanctions and/or other relief.

**1. Jurisdiction**

HSD makes two principal arguments to contend that the Court does not have jurisdiction over this motion. First, HSD argues that the Relator does not have standing to bring the motion. Second, HSD urges that the Court lacks jurisdiction over HSD as a non-party.

HSD argues that the Relator does not have standing to bring a motion for sanctions in a qui tam action, when the United States had not yet decided to intervene or decline. HSD cites to 31 U.S.C. § 3730(c)(3) for the proposition that the Relator may not "conduct" the action until the

---

[3] The NMFATA "tracks closely the longstanding federal False Claims Act," including the seal provisions. *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 297 P.3d 357, 364 (N.M. Ct. App. 2012), *affirmed in part and reversed in part on other grounds*, 355 P.3d 1 (N.M. 2015). Unless otherwise noted, all further references to the FCA seal or breach of the FCA seal apply equally to the NMFATA provisions.

United States declines the case, and therefore the Relator does not have standing to move for sanctions. Additionally, HSD argues that the United States is not a party until it elects to intervene, and therefore cannot prosecute the motion for sanctions. (Doc. 36 at 7 (citing *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009)).) HSD's reliance on *Eisenstein* is misplaced: the Supreme Court held that "when the United States has declined to intervene in a privately initiated FCA action, it is not a 'party' to the litigation" for purposes of determining when an appeal is timely. 556 U.S. at 937. The Court did not hold that the United States is not a "party," prior to its intervention, for purposes of enforcing the seal requirement. Furthermore, the United States is the real party in interest to the seal, *see, e.g.*, *United States ex rel. Bibby v. Well Fargo Home Mortg. Inc.*, 76 F. Supp. 3d 1399, 1405 (N.D. Ga. 2015) (when considering the impact of a seal violation, "the Court sought the position of the Government, as the party ostensibly harmed by . . . seal violations"), and has joined the motion for sanctions. Even if the Relator does not have standing to bring the motion for sanctions, the United States has standing as the injured party. *See, e.g.*, *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 430 (4th Cir. 2015) (explaining that the FCA seal exists to protect the United States, giving it time to determine whether it will intervene and to investigate the allegations); *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011) (same); (*see also* Doc. 36 at 25 "The damage, if any, that is to be remedied, is damage suffered by the United States, not the relator.").

HSD further contends that the Court does not have jurisdiction over HSD because HSD is not a party. There is no question that the Court has personal jurisdiction over HSD, as HSD is a state agency and operates wholly within the State and District of New Mexico. HSD formally entered its appearance under D.N.M. LR-Civ. 83.4(b) at the hearing on April 18, 2016. (Hr'g Apr. 18, 2016, at 1:37:02 PM.) Even though HSD is not a party, HSD submitted itself to the Court's jurisdiction for issues relating to its Report by filing the Report with the Court and responding to

the Order to Show Cause without objecting to the Court's jurisdiction. *See Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 971 (11th Cir. 2012) (Courts may sanction nonparties who engage in prohibited conduct when "their conduct would frustrate the court's 'ability to render a binding judgment.'" (quoting *United States v. Hall*, 472 F.2d 261, 267 (11th Cir. 1972))). Additionally, the Court has subject matter jurisdiction over this motion as it arises in the course of litigation properly before the Court on federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Finally, courts have the inherent authority to manage their dockets and to preserve the integrity of the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630-32 (1962)). In cases involving an alleged breach of the FCA seal, courts may use their inherent authority to craft remedies that are "tailored to the specific circumstances of the case." *Bibby*, 76 F. Supp. 3d at 1413 (ordering alternative sanctions against the relator for breach of the seal).

HSD next argues that it cannot be held liable in an FCA action. (Doc. 36 at 7-8 (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 766, 788 (2000), *abrogated on other grounds by Cook Co. v. United States ex rel. Chandler*, 538 U.S. 119 (2003); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 717 (10th Cir. 2006)).) This is irrelevant. The instant motion does not seek to hold HSD liable on the merits of an FCA claim, rather, Plaintiffs seek to hold HSD liable for violating state and federal law. While the Eleventh Amendment precludes "suits in federal court [against] States and state officials in appropriate circumstances," *Sikkenga*, 472 F.3d at 717, it "does not preclude jurisdiction over claims based on state officials' violation of federal law," *Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, --- F. Supp. 3d ---, ---, 2016 WL 950952, at * 8 (S.D. Fla. Mar. 7, 2016) (emphasis deleted) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Ocean v. Kearney*, 123 F. Supp. 2d 618, 621 S.D. Fla. 2000)). This argument, too, is unavailing.

6

None of HSD's arguments are persuasive. I recommend that the Court conclude that the United States has standing to prosecute the motion for sanctions as the real party in interest to any breach of the FCA seal. Additionally, I recommend that the Court conclude that it has jurisdiction over HSD for the purpose of resolving issues related to the alleged breach.

### 2. Applicability of the Seal to HSD

HSD argues that the FCA seal does not apply to it because the provision extending the seal to State authorities applies only to law enforcement authorities, which, HSD contends, it is not. (Doc. 36 at 11-12.)

The provision extending the seal to State authorities states that:

> With respect to any State or local government that is named as co-plaintiff with the United States in an action brought under subsection (b), a seal on the action ordered by the court under section 3730(b) shall not preclude the Government or the person bringing the action from serving the complaint, any other pleadings, or the written disclosure of substantially all material evidence and information possessed by the person bringing the action on the law enforcement authorities that are authorized under the law of that State or local government to **investigate and prosecute such actions** on behalf of such governments, except that such seal applies to the law enforcement authorities so served to the same extent as the seal applies to other parties in the action.

31 U.S.C. § 3732(c) (emphasis added). Subsection (b) gives the district courts jurisdiction over "any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730." HSD argues that "[t]his provision, on its face, does not apply to [HSD] because [HSD] is not a law enforcement authority for the State of New Mexico, but is merely, for relevant purposes to this lawsuit, the state Medicaid agency, imbued with no law enforcement powers." (Doc. 36 at 12.)

HSD is incorrect. The provision extending the seal specifically applies to those in State or local governments that have the authority to investigate and prosecute the state law claims that

7

arise from the same transaction or occurrence that give rise to the FCA claims. Here, the NMMFCA claims specifically arise out of the same transactions and occurrences. (*See* Doc. 1 at 39-41.) The NMMFCA directs HSD to "diligently investigate suspected violations" and gives HSD the authority to conduct any actions under the NMMFCA. N.M. STAT. ANN. § 27-14-7. According to the Supplemental Affidavit of Lisa Hahn-Cordes, HSD's General Counsel determined that N.M.S.A. § 27-14-7(c) required HSD to conduct an investigation of the factual and legal claims made in the complaint and issue a written determination thereon. (Doc. 36 at 30.) For purposes of an action brought under the FCA and the NMMFCA, HSD is a State law enforcement agency under 31 U.S.C. § 3732(c). Therefore the FCA "seal applies" to HSD "to the same extent as the seal applies" to other parties in the case, including the United States and the Relator. 31 U.S.C. § 3732(c).

Additionally, the FCA seal is not the only seal at work in this case. Qui tam claims brought under the NMFATA are also subject to a statutory seal. The NMFATA seal and the FCA seal are coextensive. Indeed, the language of the two seals tracks nearly exactly. *Compare* N.M. STAT. ANN. § 44-9-5(B) ("A complaint filed by a qui tam plaintiff shall be filed in camera in district court and shall remain under seal for at least sixty days. No service shall be made on a defendant and no response is required from a defendant until the seal has been lifted . . . .") *with* 31 U.S.C. § 3730(b)(2) ("The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.").

At the April 18, 2016, hearing, HSD argued that it was "only obligated to follow the State, and not the federal, seal." (Hr'g, April 18, 2016, at 1:41:03 PM.) Assuming, for the moment, that HSD is correct that it was bound only by the State seal, HSD failed to appreciate that it was bound by the NMFATA seal as well as the NMMFCA seal. HSD has not, at any time, advanced an argument as to why it is not bound by the NMFATA seal. Indeed, HSD admitted at the hearing that

it is bound by the NMFATA seal.

Finally, HSD argues that the seal does not apply to it because HSD is a distinct State agency and is not a co-plaintiff. The State is the real party in interest for NMFATA claims, *see Eisenstein*, 556 U.S. at 934-35, and for NMFATA purposes, the term "state" means "the state of New Mexico or any of its branches, agencies departments, boards, commissions, officers, institutions or instrumentalities . . . ," N.M. STAT. ANN. § 44-9-2(F). This argument is unavailing.

The NMFATA and the FCA claims rest on the same factual predicate. Any breach of the FCA seal is equally a breach of the NMFATA seal, which HSD has admitted is binding. HSD is bound by both the FCA and the NMFATA seals.

### 3. HSD Breached the Seal

The next question is whether HSD breached the seal. The Relator argues that HSD breached the FCA seal by complying with NMMFCA's § 27-14-7(C) directive to produce and serve a copy of its Report on the Defendants. (Doc. 41.) The United States and the NMAG agree, with the NMAG urging that HSD also breached the NMFATA seal. (Docs. 38, 42.) HSD argues that: 1) disclosing the Report to the Defendants did not violate the seal because the seal only applies to the Complaint; 2) HSD did not violate the seal because it did not engage in public disclosure; and 3) the FCA does not supplant state law with regard to an attorney's compliance with state law. (Doc. 36.)

HSD previously admitted that it is bound by State law, including the NMFATA seal, and I have recommended that the Court find that HSD is also bound by the FCA seal. In most FCA cases where there arises an issue over breach of the seal, it is the relator who has allegedly breached. *See, e.g.*, *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 244 (9th Cir. 1995) (Relator breached the seal by making statements to the *Los Angeles Times* about the case). The cases discussing a breach of the FCA seal universally involve the relator violating the seal. Here,

however, it is a non-party State agency that allegedly breached the seal. It bears repeating that this is a unique situation.

The parties agree that the seal exists for the benefit of the Government's investigation. *See Smith*, 796 F.3d at 430 (citing *Am. Civil Liberties Union*, 673 F.3d at 250). "The primary purpose of [the] seal requirement is to balance the *qui tam* relator's interest in initiating the lawsuit with the Government's interest in investigating the relator's claim and intervening or alternatively pursuing a possible criminal case." *Bibby*, 76 F. Supp. 3d at 1406. The FCA seal strikes a balance between these purposes "by allowing the *qui tam* relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation." *Lujan*, 67 F.3d at 247 (citing S. REP. No. 99-345, 99th Cong., 2d Sess. 24, *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5289)). With respect to the Government's interests, the seal requirement "gives the Government time to investigate the alleged fraud, determine whether it is already investigating the alleged fraud, and decide whether it will prosecute the suit itself before the target is tipped off." *United States ex rel. Gale v. Omnicare, Inc.*, No. 1:10-cv-127, 2013 WL 2476853, at *5 (N.D. Ohio June 7, 2013) (unpublished); *see also United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d Cir. 1995).

HSD's first two arguments as to how disclosure of the Report did not violate the seal can be handled together. First, HSD contends that disclosing the Report to the Defendants did not violate the seal because the seal applies only to the Complaint. Second, HSD argues that it did not violate the seal because it did not publicly disclose the existence of the case. Both contentions fail.

The typical case involving a breach of the seal arises when the relator fails to file the qui tam complaint under seal. *See, e.g.*, *Lujan*, 67 F.3d at 246. Many courts confine their analysis "to disclosures of the existence of the suit itself, and do not consider disclosures of the underlying

10

allegations." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 471 (5th Cir. 2015), *cert. granted on other grounds*; *see also Am. Civil Liberties Union*, 673 F.3d at 254 ("[T]he seal provisions limit the relator only from publicly disclosing the filing of the qui tam complaint. Nothing in the FCA prevents the qui tam relator from disclosing the existence of the fraud."). In addition to the Complaint itself, other courts understand the seal to cover the existence of the qui tam complaint. *See Lujan*, 67 F.3d at 244 (relator "clearly violated the seal provision . . . by making statements to the *Los Angeles Times* about the existence and nature of her *qui tam* suit"); *Gale*, 2013 WL 2476853, at *3.

Here, HSD's Report contains the case caption on the first page: *United States of American and The State of New Mexico; ex rel., La Frontera Center, Inc., an Arizona Nonprofit Corporation, Relator, Plaintiff v. United Behavioral Health, Inc., a Foreign Corporation; United Healthcare Insurance, Inc., a Foreign Corporation; OptumHealth New Mexico Operating as a DBA of United Behavioral Health, Inc., United Healthcare Ins. Co.; Black and White Corporations and John and Jane Does I-X, Defendants* [sic]. (Doc. 15 at 1.) The caption alone makes clear that this is a qui tam action brought, in part, on behalf of the United States. While the Tenth Circuit has not clearly addressed the extent of the seal in a qui tam action under the FCA, the weight of persuasive authority from other courts makes clear that the seal is primarily in place to prevent disclosure of the existence of a qui tam action. *See Smith*, 796 F.3d at 429; *Rigsby*, 794 F.3d at 472; *Am. Civil Liberties Union*, 673 F.3d at 254; *United States ex rel. Betteroads Asphalt, LLC v. R & F Asphalt Unlimited, Inc.*, --- F. Supp. 3d ---, ---, 2016 WL 861244, at *2 (D.P.R. Mar. 7, 2016); *Bibby*, 76 F. Supp. 3d at 1402-04. HSD disclosed the existence of the qui tam action directly to the Defendants. This disclosure violated the seal.

While some courts discuss seal violations in terms of "publicly discussing the complaint" or other public disclosure, *see Smith*, 796 F.3d at 429-30, the thrust behind this analysis is whether

the existence of the qui tam action is made known to others, *see id.* at 429 (relator's counsel violated the seal when he called defendant's in-house counsel to inform him of the recently filed qui tam action); *Rigsby*, 794 F.3d at 472 (relators violated the seal by discussing the qui tam case with reporters, even though reporters did not disclose the existence or basis of the case until the seal was lifted); *Betteroads Asphalt*, 2016 WL 861244, at *2 (improper disclosure when relator's CEO discussed general allegations with reporter, but did not disclose existence of qui tam action). Accordingly, HSD's contention that the disclosure did not violate the seal because it was not a "public disclosure" is without merit.

HSD's third argument, that the FCA does not supplant state law with regard to an attorney's compliance with state law, is both misleading and indicative of a misapprehension of the terms of the FCA seal. First, HSD relies on *United States ex rel. Fair Lab. Practices Assocs. v. Quest Diagnostics Inc.*, 734 F.3d 154, 163 (2d Cir. 2013), for the proposition that "nothing in the False Claims Act evinces a clear legislative intent to preempt state statutes and rules that regulate an attorney's [compliance with state law]." (Doc. 36 at 12 (alteration in original) (quoting *Quest Diagnostics*, 734 F.3d at 163).) In *Quest Diagnostics*, the Second Circuit held that "[n]othing in the False Claims Act evinces a clear legislative intent to preempt state statutes and rules that regulate an attorney's *disclosure of client confidences*." 734 F.3d at 163 (emphasis added). "Disclosure of client confidences" cannot reasonably be extrapolated to mean "compliance with state law."[4] HSD's reliance on *Quest Diagnostics* is misplaced.

Second, even if HSD's contention on this point were correct, nothing in the NMMFCA requires HSD to violate the FCA seal. Rather, the relevant state law provision reads:

> Within sixty days after receiving a copy of the complaint, [HSD] shall conduct an investigation of the factual allegations and legal contentions made in the complaint, shall make a written determination of whether there is substantial evidence that a

---

[4] I caution HSD to curtail its creative license with case citation in future filings.

>   violation has occurred and shall provide the person against which a complaint has been made with a copy of the determination.

N.M. STAT. ANN. § 27-14-7(C). Nothing in this provision requires HSD to reveal the case caption, the name of the United States as a co-plaintiff, or to otherwise identify that a qui tam action was filed on behalf of the United States. Because state and federal law do not conflict in this area, it is unnecessary to determine whether the FCA "supplant[s] state law" with regard to the seal versus compliance with state law notification requirements. (Doc. 36 at 12 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 499 (2005)).)

I recommend that the Court find that HSD breached the seal by disclosing the existence of the qui tam action to the Defendants.

### 4. HSD's Breach of the Seal Was Not Justified

HSD appears to contend that, even if it breached the seal, any breach of the seal was justified because: 1) HSD was complying with state law (Doc. 36 at 10-11); 2) Plaintiffs should have known about HSD's obligation under the NMMFCA and pursued affirmative action to prevent HSD from complying (Doc. 21 at 5-6); and/or 3) the Relator broke the seal first by filing a public state court action directly against the Defendants (*id.* at 4).

As discussed above, even though HSD was complying with the NMMFCA, the NMMFCA and the FCA seal are not at odds with one another, and HSD need not have violated the FCA seal in order to comply with the NMMFCA and the issuance of its Report.

HSD's argument that the Plaintiffs should have known about the NMMFCA obligations and pursued affirmative action to prevent HSD from complying therewith is, at best, frivolous. Again, complying with the NMMFCA did not require HSD to violate the seal. Second, HSD should have known about the FCA seal. *See, e.g.*, *Survivor*, 2016 WL 950952, at *10 (state agency, "as a sophisticated litigant, is also presumed to have known [about the seal]"). It is axiomatic that

ignorance of the law is no defense. Any argument by HSD that the Plaintiffs should have known about the NMMFCA Report requirement applies with equal, if not greater, force to HSD in that HSD should have known about the FCA seal.

Finally, HSD appears to want to have it both ways: in HSD's case, HSD contends that it does not violate the seal to disclose the underlying allegations of fraud; in the Relator's case, HSD contends that filing a direct state court action based on the same set of allegations violates the FCA seal. (*Compare* Doc. 36 at 10-14 *with* Doc. 21 at 4.) HSD cited no authority for the proposition the Relator violated the seal by filing a direct state court action against the Defendants based on the same general allegations as the previously filed qui tam action. HSD cited *Pilon*, in which the relators failed, completely, to comply the FCA filing requirements; *Lujan*, where the relator affirmatively disclosed the existence of the qui tam action to the *Los Angeles Times*; *Bibby*, in which the relator contacted journalists about the existence of the qui tam action; and *Rigsby*, in which the relators also contacted journalists about the qui tam action. None of these cases support HSD's theory that filing a direct state court action against the Defendants violates the seal. Indeed, as discussed above, the weight of authority prohibits the disclosure of the existence of the qui tam action, not the underlying fraud allegations. *See, e.g.*, *Am. Civil Liberties Union*, 673 F.3d at 254.

Even if state law conflicted with federal law in this instance and obligated HSD to disclose the existence of the qui tam action, HSD was "at best, 'between a rock and a hard place' due to two conflicting legal obligations." *Survivor*, 2016 WL 950952, at *11. "Litigants cannot resort to 'self-help' by ignoring one of two competing obligations." *Id.* (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637-38 (3d Cir. 1982). Even if this were the case, HSD could and should have sought guidance from the Court. HSD's breach of the seal was not justified or otherwise excusable.

14

### 5. Sanctions and/or Other Relief Against HSD are Appropriate

Having determined that HSD breached the seal and was not justified in doing so, the next question is whether this is an appropriate case for sanctions or other relief. As an initial matter, I note that HSD directed much of its briefing to the issue of whether the Court has the authority to hold HSD in contempt. (*See* Doc. 36 at 4-10, 14-21.) There is no request for a contempt order in this case. While HSD was put on notice that it may be held in civil contempt (*see* Doc. 28), the complaining parties have been clear that they do not seek an order of contempt (*see* Doc. 38 at 1-2). Accordingly, I recommend that the Court deny any request to hold HSD in civil contempt.

I have previously noted that this case is unique in that the breach of the seal came from a state agency rather than the relator. As such, the motion for sanctions or other relief against HSD is a novel situation. The courts that have addressed whether sanctions are appropriate in a breach-of-seal case have, necessarily, addressed the matter with respect to a breach by the relator. While that is not the case here, the analysis is instructive.

In deciding whether to impose sanctions for a violation of the seal provision, other courts have considered: "(1) the harm to the government caused by the violation, (2) the nature and severity of the violation, and (3) whether the [entity breaching the seal] acted in bad faith." *Betteroads Asphalt*, 2016 WL 861244, at *3 (citing *Rigsby*, 794 F.3d at 470-71; *Lujan*, 67 F.3d at 246). Courts have also considered the extent to which the violation "frustrate[s] [the] purposes" of the FCA seal, namely permitting the Government to determine whether it is already investigating the alleged fraud, permitting the Government to investigate the alleged fraud and make a determination on intervention, and preventing the "'an alleged fraudster from being tipped off about an investigation.'" *Smith*, 796 F.3d at 430 (quoting *Am. Civil Liberties Union*, 673 F.3d at 250); *see also Bibby*, 76 F. Supp. 3d at 1407; *United States ex rel. Le Blanc v. ITT Indus., Inc.*, 492 F. Supp. 2d 303, 307-08 (S.D.N.Y. 2007) (analyzing whether seal violation frustrated the interests

supported by in camera filing (citing *Pilon*, 60 F.3d at 998-99)). The Ninth Circuit considered 1) whether the Government was actually harmed by the disclosure, 2) the nature of the violation with respect to the purposes of the seal, and 3) "the presence or absence of bad faith or willfulness." *Lujan*, 67 F.3d at 245-46.

HSD argues that monetary sanctions are not appropriate, that there is no conduct to remediate, that the *Lujan* factors weigh in its favor, and that the factors necessary for imposition of injunctive relief have not been met. (*See generally* Doc. 36.) The Relator initially sought its attorney's fees in bringing the motion and for prosecuting the qui tam action to date, but later asked that this request be held in abeyance. I address the Relator's request first.

The Relator is not entitled to seek its attorney's fees under the FCA, against HSD, at this or any juncture. First, the Relator does not and cannot seek to hold HSD liable under the FCA. *See Vermont Agency of Nat. Res.*, 529 U.S. at 784-85. Second, the FCA provides for attorney's fees in three proscribed circumstances:

> (1) for a plaintiff where there has been a recovery against a defendant (31 U.S.C. § 3730(d)(1)-(2)); (2) for a defendant where a plaintiff brings a frivolous suit (31 U.S.C. § 3730(d)(4)); and (3) for a plaintiff where a defendant retaliates against the plaintiff for pursuing an FCA claim (31 U.S.C. § 3730(h)). The FCA also incorporates the attorney's fees provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d). 31 U.S.C. § 3730(g).

*United States ex rel. Sutton v. Double Day Office Servs.*, 121 F.3d 531, 535 (9th Cir. 1997). There is no provision for a relator to recover its attorney's fees at the intermediate step of a motion for sanctions against a state agency for violations of the seal provision. I recommend that the Court deny this request.

Turning to HSD's arguments, HSD is correct that monetary sanctions are not appropriate in this case. *See Vermont Agency of Nat. Res.*, 529 U.S. at 784-85. Indeed, the United States does not seek monetary sanctions. (Doc. 38 at 1.)

HSD then argues that there is no conduct to remediate in this case—because it has fulfilled its obligations under the NMMFCA and has no further involvement in the case—and sanctions are therefore inappropriate. (Doc. 36 at 24-25.) Even if HSD is correct that its role in the case ended, that is not the purpose of sanctions or other relief in this instance. Rather, the United States here seeks "tailored remedies [to] help identify, contain, and mitigate any harm that may result to the United States' investigation." (Doc. 38 at 5.) The sanctions or other relief sought in this case is not meant to punish HSD, so the fact that HSD will no longer be involved is irrelevant.

HSD also suggests that the factors traditionally used when considering injunctive relief have not been met in this case, *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (outlining the four-factor analysis: 1) likelihood of success on the merits, 2) likelihood of suffering irreparable harm in the absence of preliminary relief, 3) balance of equities, and 4) injunctive relief in the public interest). (Doc. 36 at 25-26.) This, too, is irrelevant. The factors discussed by HSD, without citation to any authority, apply to preliminary injunctions. *See Winter*, 555 U.S. at 20. This is not a case involving a preliminary injunction. This is not a case involving injunctive relief in lieu of monetary damages. Rather, this case involves breach of a statutory seal and equitable relief to mitigate the damage flowing from that breach. Rather than a motion sounding in injunctive relief, this motion sounds more in discovery violations and similar relief. Accordingly, HSD's argument that sanctions or other relief are not appropriate because the factors for a preliminary injunction have not been met is irrelevant.

Finally, HSD contends that the *Lujan* factors weigh in HSD's favor and counsel against imposing sanctions or other relief. I disagree. First, the Defendants in this case have been alerted to the existence of the qui tam action and, by extension, the associated federal investigation. This is exactly the harm to the Government that the seal is meant to prevent. *See Smith*, 796 F.3d at 429; *Rigsby*, 794 F.3d at 472; *Am. Civil Liberties Union*, 673 F.3d at 254; *Betteroads Asphalt*, 2016 WL

17

861244, at *2; *Bibby*, 76 F. Supp. 3d at 1402-04. While the United States has intimated that it is unsure of the extent of the harm from the breach (Doc. 38 at 7), the United States has necessarily been harmed by the disclosure of the qui tam action because the disclosure frustrated the objectives of the seal, as discussed in detail above. Second, the violation was severe and went to the heart of the seal's purpose. The seal exists to protect the Government's investigation of alleged fraud without alerting "'an alleged fraudster [about the] investigation.'" *Smith*, 796 F.3d at 430 (quoting *Am. Civil Liberties Union*, 673 F.3d at 250); *see also Bibby*, 76 F. Supp. 3d at 1407. While this violation was not as egregious as contacting the *Los Angeles Times*, *see Lujan*, 67 F.3d at 244, or completely failing to comply with the sealing requirements of the FCA, *see Pilon*, 60 F.3d at 997-98, the violation is still severe. HSD affirmatively notified the Defendants about the existence of the qui tam action. Had the Relator engaged in such conduct, I might recommend that the Court seriously consider dismissing the case with prejudice as to the Relator and without prejudice as to the Government. *See, e.g.*, *Le Blanc*, 492 F. Supp. 2d at 304. Under these circumstances, however, I recommend that the Court find HSD's violation of the seal to be severe. Finally, HSD argues that it did not act in bad faith. I agree that there is no evidence that HSD acted in bad faith, but it did act willfully by going beyond its statutory mandate and affirmatively disclosing the existence of the federal qui tam action to the Defendants.

Contrary to HSD's urging, I recommend that the Court conclude that the *Lujan* factors weigh against HSD and counsel in favor of imposing sanctions or other relief.

### 6. The United States's Recommendations are Appropriate

After the hearing on this matter, HSD agreed to provide its investigative file to the United States and the NMAG, but requests a partial lift of the seal before doing so. The United States requests "three categories of relief": first, that the Court "make clear HSD's obligations with respect to the seal in this and future sealed *qui tam* actions" by finding that HSD breached the seal;

second, "to help ascertain the full extent of HSD's breach, the United States requests that the Court instruct HSD to provide the United States and [the NMAG] with . . . all communications from the time the complaint was served on HSD to present, between HSD and Defendant (including counsel for Defendant) . . . concerning this case or HSD's report" and urges that no partial lift of the seal is required pursuant to 31 U.S.C. § 3732(c); and third, "to help contain information shared inappropriately with the Defendant and mitigate harm that has resulted or may result from HSD's disclosure, the United States requests that the Court issue a subpoena or other appropriate order directing the Defendant" to: 1) produce a list of everyone, including attorneys, who received a copy of the Report; 2) destroy all copies of the Report in Defendants' "possession, custody, or control within fourteen days" and to notify the Court when this is complete; 3) "preserve any and all records and documents concerning the subject matter of HSD's report, including but not limited to all documents concerning Defendant's negotiation and performance of its Managed Care Organization Contract with the State of New Mexico"; and 4) preserve any and all records and documents concerning "Defendant's fraud, waste, and abuse prevention and detection activities from 2009 to the present." (Doc. 38 at 6-7.) Additionally, the United States requests a partial lift of the seal to authorize service of such a subpoena or order upon the Defendant.

The United States's requests for relief, as the injured party, are both measured and reasonable. The Government does not seek monetary damages or a contempt order. Rather, the Government seeks cooperation with HSD to ensure that such a breach does not happen again and to limit the damage in this case. I recommend that the Court adopt the United States's requests for relief. Specifically, I recommend that the Court find that HSD breached the seal in this case, as explained herein; direct HSD to provide the United States and the NMAG with a copy of HSD's investigative file and all communications between HSD and Defendants since the Complaint was filed, and reject HSD's request for a partial lift of the seal because it is unnecessary pursuant to 31

19

U.S.C. § 3732(c), which allows for information sharing between state and federal authorities that are equally bound by the seal; and partially lift the seal to allow the United States to send the Defendants a subpoena for a list of all persons who received a copy of HSD's report and a preservation request for any and all records or documents concerning the subject matter of HSD's report and other matters noted by the Government in its Supplemental Brief (Doc. 38 at 6-7); and partially lift the seal to affirmatively Order the Defendants to destroy all copies of HSD's report within their possession, custody, or control within fourteen days, and to notify the Court when such destruction is complete. Finally, as the United States's investigation of the breach continues, I recommend that the Court grant the United States leave to supplement or amend its requests for sanctions or other remedial measures against HSD in the future.

## CONCLUSION

As discussed herein, I recommend that the Court grant the motion for relief against HSD to the extent of the United States's requests and deny the Relator's motion for attorney's fees.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*[Signature: William P. Lynch]*

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE