## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————————

UNITED STATES OF AMERICA and THE
STATE OF NEW MEXICO; ex rel.,
LA FRONTERA CENTER, INC., an Arizona
Nonprofit Corporation, RELATOR

      Plaintiffs,

      vs.                                                      No: 1:15-cv-01164-KWR-JHR

UNITED BEHAVIORAL HEALTH, INC.,
a Foreign Corporation; UNITED
HEALTHCARE INSURANCE, INC., a
foreign corporation; OPTUMHEALTH
NEW MEXICO operating as a d/b/a of
UNITED BEHAVIORAL HEALTH, INC.,
UNITED HEALTHCARE INS. CO.; BLACK
and WHITE Corporation and JOHN and
JANE DOES I-X,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon Defendants', OptumHealth New Mexico,

United Behavioral Health, Inc, United Healthcare Ins. Co, and United Healthcare Insurance, Inc.,

Motion to Dismiss (Doc. 124) and Request for Judicial Notice in Support of Motion to Dismiss

(Doc. 125). Having reviewed the parties' pleadings and the relevant law, the Court finds that the

motion is well taken, and is therefore **GRANTED IN PART** and **DENIED IN PART**. Counts I

and Count IV are dismissed with prejudice. Count V is dismissed in part with prejudice.

## BACKGROUND

La Frontera Center, Inc, an Arizona nonprofit corporation, brings this qui tam suit under

the False Claims Act (FCA), 31 U.S.C. § 3730, New Mexico Medicaid False Claims Act

(MFCA), N.M. Stat. Ann. § 27-14-7, the New Mexico Fraud Against Taxpayers Act (FATA), N.M Stat. Ann. § 44-9-7, against United Behavioral Health, Inc., a foreign corporation, United Healthcare Insurance, Inc., a foreign corporation, Optumhealth New Mexico operating as a d/b/a of United Behavioral Health Inc., United Healthcare Insurance Corporation, Black and White Corporation, and Defendants John and Jane Does I-X.

Relator filed this suit under seal on December 23, 2015 (Doc. 1), and amended their complaint, under seal, on February 9, 2017 (Doc. 77). On February 2, 2022, the United States of America and the State of New Mexico filed their notice of election to decline intervention in this case. Doc. 114. The Amended Complaint for Damages Under the False Claims Act subsequently was served on Defendants on February 18, 2022.

On August 8, 2008, New Mexico Human Services Department ("HSD") and fourteen New Mexico agencies ("Collaborative") published a 2008 Request for Proposal ("RFP") for qualified Managed Care Organizations ("MCO") to submit proposal to become New Mexico's Medicaid and non-Medicaid statewide entity to administer behavioral health and substance abuse services. Doc. 77 at ¶ 34-36. On January 22, 2009, Defendants ("United") executed a contract to become the sole Medicaid and non-Medicaid behavioral health service MCO for New Mexico. *Id*. at ¶ 36.

Relator alleges that United falsely represented that United had substantial national experience in implementing and operating successful Medicaid programs on a statewide basis and possessed essential expertise in behavioral health managed care. *Id.* at ¶ 38. Relator alleges that United represented that it had a functional system to ensure timely claim adjudication and compliances with billing obligations and policies to address and prevent fraud and abuse. *Id*. at ¶ 42-43. Relator alleges that United did not have a claims adjudication system tailored to the RFP

requirements. *Id*. at ¶ 45. Relator alleges that United's claims adjudication system was incapable of adjudicating provider claims, and on October 2009 and February 16, 2011, the New Mexico HSD sanctioned United for its failure to have a functioning claims processing system. *Id*. at ¶ 50-51. Relator further alleges that United's system did not detect fraud from 2009-2013. Id. at ¶ 52.

On April 12, 2012, the New Mexico HSD and the Collaborative proposed replacing United with Centennial Care on January 1, 2014. *Id*. at ¶ 53. United agreed to enter into a Transitional Agreement to transfer membership and services to Centennial Care. *Id*. at ¶ 53. The Transitional Agreement, Amendment 11, stated that United would:

> develop and provide to the Collaborative written policies and procedures that addresses the clinical transition issues and transfer of potentially large number of members into or out of its organization and shall be submitted to HSD for review and approval. These policies and procedures shall include how the SE [United] proposes to identify members currently receiving services, within ninety (90) days of the effective date of Amendment No. 11 develop and provide to the Collaborative a detailed plan for the transition of an individual member, which includes member and provider education about the SE and the SE's process to assure any existing courses of treatment are revised as necessary;

> identify members and provide necessary data and clinical information to the Centennial Care MCOs for members switching plans, either individually or in larger numbers to avoid unnecessary delays in treatment that could be detrimental to the member.

*Id.* at ¶ 54. The 2009 MCO Contract stated that, "[u]nder no circumstances shall this Contract exceed a total of four (4) years in duration," which was set to end on June 30, 2013. *Id*. at ¶ 57. Amendment No. 11 extended the 2009 MCO Contract to December 31, 2013. *Id.* Relator alleges that Amendment No. 11 was a substantive and material revision to the 2009 MCO Contract. *Id*. at ¶ 58. Relator alleges that Amendment No. 11 added contract language that United could hold funding it owed providers for services already rendered by United subcontracted providers. *Id*. at ¶ 59.

Relator alleges that United data management system produced inaccurate, incomplete, and false data. *Id.* at ¶ 62 In December 2012 and January 2013, United conducted pre-audit

summaries on 15 subcontractor providers and determined fraudulent billing practices. *Id*. at ¶ 64. New Mexico HSD hired a third-party auditor, Public Consulting Group, Inc. (PSG). *Id.* at ¶ 66. Relator alleges that United had a major role with the PSG audit. *Id*. Relator alleges that a confidential final audit report dated June 21, 2013, confirmed that United did not implement best practices for claims processing, the payment management system was not capable of timely and accurately adjudicating providers claims, and the failure lead to United knowingly overpaying 15 of its subcontracted providers. *Id*. at ¶ 69. On June 24, 2013, New Mexico HSD announced that they received credible allegations that 15 United subcontracted providers had defrauded the Medicaid program. *Id*. at ¶ 70. Relator alleges that the original PCG Audit Report contained a statement that "PCG's Case File Audit did not uncover what it would consider to be credible allegations of fraud, nor significant concerns related to consumer safety." *Id*. at ¶ 71.

On May 13, 2013, United, New Mexico HSD, and Collaborative agreed to the Professional Services Contract, Contact Amendment No. 15 to the 2009 MCO Contract. *Id*. at ¶ 75. Relator alleges that Amendment No. 15 absolved United of responsibility for its defective provider claims systems. Relator alleges that Amendment No. 15 designated United as the Recovery Audit Contractor under § 6411 of the Patient Protection and Accountable Care Act, which United would receive a percentage of any funds recovered from United's alleged overpayments. Relator further alleges that Amendment No. 15 allowed United to retain 40 percent of all state Medicaid funds recovered from United subcontracted providers accused of fraud. *Id.*

On June 24, 2013, Relator alleges that United used its authority under Amendment No. 15 to cut funding to the 15 subcontractor providers. United allegedly kept approximately $18 million for services already delivered by the 15 subcontracted providers. *Id.* at ¶ 86.

On June 27, 2013, Relator and New Mexico HSD entered into an emergency, no-bid Professional Services Contract. *Id.* at ¶ 85 Relator alleges that the contract provided for Relator to temporarily, over a six-month period, assume responsibilities for delivering services in place of United's terminated subcontracted providers. *Id*. New Mexico HSD would provide the funds to United, which would in turn disburse the funds to Relator. *Id.* Four other Arizona Providers executed identical emergency procurement contracts. *Id.*

From June – December 2013, Relator alleges that United received $538,263,082 in Medicaid funds. *Id.* at ¶ 73 Relator alleges that United withheld the funds from subcontracted providers and refused to spend money to create and implement the Transition Plan in Amendment No. 11. *Id.* at ¶ 74. Relator alleges that United underpaid or denied the Relator's and other Arizona providers' claims and that United did not report to CMS or HSD that the Medicaid and non-Medicaid money United received was not used to pay provider claims. *Id*. at ¶ 91.

On August 12, 2013, HSD and United executed Amendment No. 17, which increased the amount of State and Federal Medicaid and non-Medicaid funds paid to United. Relator alleges 87 percent of this new money was earmarked to pay providers for supplying services, but United failed to pay the providers' claims. *Id.* at ¶ 93, 98. Relator alleges United made no reasonable effort to enable its claims processing system to pay Relator and other Arizona providers and United did not supply HSD with useful management and reporting data. *Id*. at ¶ 97.

As a result, Relator alleges the following claims:

Count I: Violation of 31 U.S.C. § 3729(a)(1) – False Representation, Certification, Omission of Material Facts and Fraudulent Inducement/Promissory Fraud

Count II: Violation of the Federal False Claims Act, 31 U.S.C. § 3729 (a)(1)

Count III: Violation of the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §
44-9-1

Count IV: Violation of the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §
27-14-1

Count V: Violation of N.M. Stat. Ann. § 44-9-5; N.M. Stat. Ann. § 30-44-7(A)(3), 30-44-
4; and N.M. Stat. Ann § 27-14-4.

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon
which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a
plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is
plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual
allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the
light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal,
Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should
disregard all conclusory statements of law and consider whether the remaining specific factual
allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming,
LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable
inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However,
mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action"
will not suffice. *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendants argue the Court should dismiss Relator's claims pursuant to Rule 41(b) for failure to prosecute. Doc. 124 at 12. Defendants further argue the Court should dismiss Relator's claims pursuant to Riles 8(a), 9(b), and 12(b)(6) because Relator's complaint was filed after the statute of limitation, the claims rely on public information, and the claims are not plausible or specific. *Id.* at 16-24. Relator argues that dismissal under Rule 41(b) is not appropriate. Doc. 128 at 2. Relator further argues that the complaint was filed within the statute of limitation, the claims do not rely on public information, and the claims are plausible and specific. *Id*. at 8-19.

The Court finds dismissal under Rule 41(b) is not appropriate because Relator and the Government have followed the statutory requirements of the FCA. The Court finds as to Count I that the complaint was filed after the statute of limitation and the public disclosure bar applies. The Court finds Count II and III met the pleading requirements of Rules 8 and 9(b) and state a claim. The Court finds Count IV must be dismissed because the New Mexico HSD found no substantial evidence to support Relator's claim under the MFCA. The Court finds that a private action cannot be filed under the Medicaid Fraud Act and that the MFCA claim must be dismissed in Count V. Finally, the Court finds that Relator's claim under the FATA in Count V satisfied the pleading requirements of Rule 8 and 9(b).

## I.  **Judicial Notice**

Defendants asked the Court to judicially notice eleven exhibits. Doc. 125. Relator did not object. Doc. 128. The eleven exhibits include:

1. N.M. STATE LEG., LEGIS. HEALTH AND HUM. SERVS. COMM., INTERIM REP. (2009), https://www.nmlegis.gov/Publications/interim_reports/lhhs09.pdf.

2. N.M. STATE LEG., LEGIS. FIN. COMM. NEWSLETTER (Dec. 2009), https://www.nmlegis.gov/entity/lfc/documents/newsletter/lfcdec09.pdf.

3. N.M. STATE LEG., LEGIS. HEALTH AND HUM. SERVS. COMM., INTERIM REP. (2010), https://www.nmlegis.gov/Publications/interim_reports/lhhs10.pdf.

4. N.M. STATE LEG., LEGIS. FIN. COMM. PROGRAM EVALUATION PROGRESS REP. (2013), https://www.nmlegis.gov/entity/lfc/documents/program_evaluation_progress_reports/human%20services%20department%20costs%20and%20outcomes%20of%20selected%20behavioral%20health%20grants%20and%20spending.pdf.

5. ValueOptions New Mexico,1 Rate Equalization Plan Update Presentation (March 27, 2008), https://newmexico.networkofcare.org/content/client/1446/RateEqualizationWorkPlanUpdateRevised3_27_08.pdf.

6. Cathleen E. Willging & Rafael M. Semansky, *It's Never Too Late to Do It Right: Lessons From Behavioral Health Reform in New Mexico*, 61 PSYCHIATRIC SERVICES 7, 646-648 (July 2010), https://ps.psychiatryonline.org/doi/epdf/10.1176/ps.2010.61.7.646 (*also available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3081636/).

7. Dan Boyd, *Behavioral Health Contractor Fined $1.3M; Providers Say Payments Are Late*, ALBUQUERQUE JOURNAL, Nov. 11, 2009, at C1.

8. *Optum-Health Faces Fines; Firm May be Millions Behind in Payments to Collaborative*, ALBUQUERQUE JOURNAL, Oct. 31, 2009, at D3.

9. Trip Jennings, *UPDATED: Firm Faces Big Fine, Possible Loss of Contract, State Says*, N.M. INDEPENDENT, Oct. 30, 2009.

10. *La Frontera Center, Inc. v. United Behavioral Health, Inc.,* Case No. 1:16-cv-00187 (D.N.M.), Complaint, ECF No. 1-1.

11. *La Frontera Center, Inc. v. United Behavioral Health, Inc.*, Case No. 1:16-cv-00187 (D.N.M.), Stipulated Order of Dismissal with Prejudice, ECF No. 34.

Under Federal Rule of Evidence 201, "[t]he [C]ourt ... must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such sources include public records, such as judicial and administrative filings and documents available on an agency website. *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt*., 565 F.3d 683, 702 n.22 (10th Cir. 2009); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). A party may submit articles to establish whether and when the matters discussed in the articles were made public, not for the content of the material. *Lane v. Page*, 649 F. Supp 2d 1256, 1301 (D.N.M 2009) (taking judicial notice of newspaper articles for the specific purpose of deciding whether inquiry notice was triggered). However, the Court's notice does not presume the truth of any disputed facts contained within those records. *See Winzler v. Toyota Motor Sales U.S.A., Inc*., 681 F.3d 1208, 1213 (10th Cir. 2012).

Accordingly, the Court concludes that the judicial and administrative documents and newspaper articles filed as exhibits are appropriate for judicial notice as to their existence and contents, but the Court will not assume the truthfulness of factual matters that remain in dispute. "Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting

the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

## II.   <u>Failure to Prosecute</u>

Defendants argues that the Court should dismiss pursuant to Rule 41(b) for failure to prosecute. Doc. 124 at 12. The complaint was under seal for approximately seven years. *Id*. at 12. Defendants argue that they were prejudiced because of the Government's one sided discovery and Defendants had to settle a contract case with Relator based on the same allegations, without notice of this claim. *Id.* at 14-15. Defendants argue dismissal is appropriate because of the extreme abuse of FCA statutory schemed. *Id*. at 16. Relator argues that any prejudiced suffered was minimal, that it was the Court's own discretionary decision to extend the seal, and that the Relator never received warning from the Court that dismissal of action would be likely sanction for the extended seal. Doc. 128 at 4-5.

The United States submitted a statement of interest regarding Defendants' Motion for Failure to Prosecute. Doc. 140. The United States argues that Defendants inaccurately equate their investigation to discovery. *Id*. at 5. The United States further argues that they sought an extension and each time the Court entered an order finding good cause to grant the extension. *Id.* The Court agrees with the United States that the Relator, the United States, and the State of New Mexico complied with the FCA, and thus, dismissal pursuant to Rule 41(b) is not appropriate.

Federal Rule of Civil Procedure Rule 41(b) provides:

If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule–except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). The sanction of dismissal with prejudice for failure to prosecute is a "severe sanction," warranted when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Corp.*, 497 F.3d 1135, 1143-44 (10th Cir. 2007) (*quoting Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)). Courts apply five factors to determine whether a motion under Rule 41(b) should be granted: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citations omitted); *see also Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (extending *Ehrenhaus* to Fed. R. Civ. P. 41(b) motions).

Here, the Court finds the issue is whether the parties were in compliance with the FCA. A Relator may bring a civil action in violation of the FCA, and a copy of the complaint must remain under seal for at least 60 days. 31 U.S.C. § 3730. The Government may elect to intervene within 60 days after it receives the complaint and the material evidence. *Id.* If the government shows good cause, the Government may move the Court for an extension of time. *Id.* Before the expiration of the 60-day period or any extension, the Government must proceed with the action or notify the Court that it declines to take over the action. *Id.*

On December 23, 2015, Relator filed a qui tam complaint. The United States and the State of New Mexico filed eleven Joint Motions to Extend. Docs. 16, 50, 82, 89, 91, 93, 95, 98, 100, 103, 108. The Court found a showing of good cause and granted each motion. Docs. 17, 51, 86, 90, 92, 94, 96, 99, 101, 104, 109. The final extension was to April 4, 2022. On February 2, 2022, the United States and the State of New Mexico declined to intervene, over 7 years after the

complaint was filed. The Court is concerned about the Government's habitual requested

extensions. *Martin v. Life Care Centers of Am., Inc.*, 912 F. Supp. 2d 618, 623 (E.D. Tenn. 2012)

(describing a four-year extension as bordering "on the absurd" and that "habitual requests for

extensions of the election period were wholly inappropriate."). However, the Court has reviewed

the motions and respects its earlier orders finding a showing of good cause.

The Court finds that dismissing the case pursuant to Federal Rule of Civil Procedure Rule

41(b) is not appropriate. The Government and Relator complied with the statutory requirements

of the FCA. As discussed, under the FCA, the Government may file extensions for good cause.

The FCA has no limit on the number of extensions the Government may file, and the Court

previously found each motion to show good cause. Furthermore, Relator may not bring the

action until the Government has notified the Court that it declines to intervene. 31 U.S.C. §

3730(b)(4)(B). Therefore, there was not a failure to prosecute because both the Government and

the Relator have complied with the statutory requirements of the FCA.

**III.     Count I: Violation of 31 U.S.C. § 3729(a)(1) – False Representation, Certification,**

**Omission of Material Facts and Fraudulent Inducement/Promissory Fraud.**

Relator alleges in Count I that Defendants made false representations and material

omissions to induce New Mexico into entering a contract with Defendants in violation of the

FCA. Doc. 77 at ¶ 118. The FCA "covers all fraudulent attempts to cause the government to pay

out sums of money." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc*., 543 F.3d

1211, 1217 (10th Cir. 2008) (quoting United States ex rel. Boothe v. Sun Healthcare Grp., Inc.,

496 F.3d 1169, 1172 (10th Cir. 2007)). The FCA imposes liability for:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for
> payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false
> record or statement material to a false or fraudulent claim; (C) conspires to commit a
> violation of subparagraph (A), (B), (D), (E), (F), or (G); (D) has possession, custody, or

control of property or money used or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property; (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true; (F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or (G) knowingly makes, uses, or causes to be made, or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly or improperly avoids or decreases an obligation to pay transmit money or property to the Government.

31 U.S.C. § 3729(a)(1). A "claim" includes both "direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996, 195 L.Ed.2d 348 (2016).

### 1. Statute of Limitations

Defendants argue that the FCA claim should be dismissed as untimely. Doc. 141 at 13. The complaint was filed on December 23, 2015, when the alleged fraud, the entering of the contract, took place on January 22, 2009, more than six years after the Government knew or should have known of the alleged fraud. *Id.* at 14. Defendants argue that the six-year period applies because the Government knew or should have known that the claims' processing system was not working by October 29, 2009. *Id.* at 15. Relator argues that there are numerous factual disputes that preclude dismissal based on the statute of limitations, including the dates of Defendants filed false claims and the date that the government knew or should have known of Defendants' fraud. Doc. 142 at 1. The Court finds Relator's claim untimely because it was filed outside the FCA's statute of limitations.

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). "If the

allegations, for example, show that relief is barred by the statute of limitations, the complaint is subject to dismissal for failure to state a claim...." *Id*; *see also Aldrich v. McCulloch Props., Inc*., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

"The False Claims Act contains two limitations periods that apply to ... an action asserting that a person presented false claims to the United States Government. The first period"—found in 31 U.S.C. § 3731(b)(1)—"requires that the action be brought within 6 years after the statutory violation occurred. The second period"—found in 31 U.S.C. § 3731(b)(2)— "requires that the action be brought within 3 years after the United States official charged with the responsibility to act knew or should have known the relevant facts, but not more than 10 years after the violation." *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt,* 139 S. Ct. 1507, 1510 (2019). If the two methods of calculation yield different dates, "[w]hichever period provides the later date serves as the limitations period." *Id.*

Relator alleges "that FCA liability arises in Count I under the theory of fraud in the inducement (promissory fraud)." Doc. 77 at ¶ 118. Specifically, Relator alleges that Defendants made false representations and material omissions to induce the State of New Mexico to enter into the MCO contract with Defendants. *Id.* Therefore, the date the alleged violation occurred on January 22, 2009 when Defendants entered the MCO Contract with the New Mexico Collaborative.

First, the Court reviews the limitation period of six years. 31 U.S.C. § 3731(b)(1). Relator's complaint was filed on December 23, 2015, six years and 11 months after the alleged

violation on January 22, 2009. The Court finds that Relator filed their complaint outside the limitation period of six years.

Second, the Court reviews the limitation period, which "requires that the action be brought within 3 years after the United States official charged with the responsibility to act knew or should have known the relevant facts, but not more than 10 years after the violation." *Cochise Consultancy*, 139 S. Ct. at 1510. To determine whether Relator can access the 10-year extended period, the Court must identify when the United States official knew or should reasonably have known the relevant underlying facts. Id.

The Supreme Court and the Tenth Circuit have yet to address who the "official of the United States charged with responsibility to act in the circumstances" is for the purpose of subsection 3731(b)(2). *See, e.g., LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 295 (2018) ("Other judges in various federal courts, for example, are divided on whether the 'official of the United States' refers specifically to an official within the Civil Division of the DOJ or to any government employee."); *see also, e.g., Cochise Consultancy,* 139 S. Ct. at 1514 (declining to determine "which official or officials the statute is referring to" but concluding that the phrase does exclude relators). This Court finds persuasive to conclude that "the official of the United States" is an official authorized to assert FCA claims on behalf of the Government, either the Attorney General or their designees within the Department of Justice. *See eg. United States ex rel. Frey v. Health Mgmt. Sys., Inc.,* No. 3:19-CV-0920-B, 2021 WL 4502275, at *15 (N.D. Tex. Oct. 1, 2021) (holding that the official is an employee of the DOJ civil division and not an employee of the United States Health and Human Services); *United States v. DeFelice*, No. CIV-14-415-RAW, 2015 WL 7018018, at *3 (E.D. Okla. Nov. 10, 2015) (holding that the limitation period "begins to run when an official who has authority to initiate litigation under the FCA

obtains knowledge of the fraud—not just any government official"); *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC, 2002 WL 35628747, at *4 C.D. Cal. Aug. 5, 2002 ("Based upon the legislative history, the Court finds that the relevant official is one withing the Department of Justice."); *United States ex rel. Condie v. Bd. of Regents of Univ. of Cal.*, No. C89-3550-FMS, 1993 WL 740185, at *2 (N.D. Cal. Sept. 7, 1993) (holding "that the statute of limitations was tolled until the DOJ became aware, or should have become aware, of the false claims."); *United States v. Inc. Vill. of Island Park*, 791 F. Supp. 354, 363 (E.D.N.Y. 1992) ("[T]he limitations period was tolled until 'the facts material to the right of action [were] *897 known or reasonably should have been known' by that DOJ official.").

The Court finds that the United States Department of Justice should have reasonably known the underlying facts by the end of 2009. The New Mexico Legislative Health and Human Services Committee (LHHSC) held an October and November hearing on 2009 addressing United's failure to process providers claims and released a 2009 Interim Report, stating:

> Members of the LHHS have received numerous complaints reporting that the new [statewide entity] SE, OptumHealth New Mexico, a subsidiary of United Healthcare, failed to timely process and pay providers claims. . .They survey reported overwhelmingly that providers were frustrated and their resources stressed due to challenges arising from the SE losing claims, the SE's failure to timely pay claims, allegations of the SE's unfair recoupment of emergency payments, the SE's extremely cumbersome paperwork requirement using faulty and illogical software programming, its failure to provide adequate channels of communication, its failure to provide effective channels of dispute resolution and alleged retaliation against providers who complained about the SE's performance. LHHS members repeatedly demanded that the [Interagency Behavioral Health Purchasing Collaborative] take effective action to address these problems. The IBHPC reviewed the contract with the SE and inquired as to whether sanctions would be assessed upon the SE, and after review, issued a notice of sanctions and a directed corrective action plan for addressing the SE's failure to perform. Doc. 125-1 at 6.

In December of 2009, the Legislative Finance Committee published a Newsletter discussing how "Optum Health NM, which took over the nearly $400 million statewide contact

on July 1, has been sanctioned for failing to have a fully functioning claims management system.
. .The state, which has appointed a monitor to supervise OptumHealth has ordered Optum Health
to pay a fine of $1.2 million and $10,000 a day until the claims system is fixed." Doc. 125-2 at 2.
Relator's complaint also discusses how "[i]n October 2009 the New Mexico HSD sanctioned
United for its failure to have in place a functioning claims processing system." Doc. 77 at 21 ¶ 50

      The United States Department of Justice should have known through these public
investigations, sanctions, and news releases of United's failure to meet contract obligations and
the alleged fraud by October of 2009. Therefore, Relator had 3 years after a government official
should have known of the alleged fraud to file a complaint. The 6 year limitation is longer than
the 3 year limitation in this case, and thus, Relator's complaint is governed by the FCA 6-year
limitation. As discussed, Relator failed to file the complaint within this limitation, thus Count 1
is barred by the FCA statute of limitations.

      **2.  Public Disclosure Bar**

      Furthermore, the Court finds that Count 1 must be dismissed because of the FCA's public
disclosure bar. Defendants argue that the claim is barred because the Court must dismiss a claim
that was publicly disclosed. Doc. 124 at 22-23. The Relator argues that the public disclosure bar
does not apply. Doc. 128 at 12. The Relator argues that the fraud had not been publicly
disclosed, rather the public disclosure was about Defendants failure to meet contractual
obligations. Doc. 128 at 13. The Court disagrees. While the publicly disclosed information was
about Defendants' failure to meet contractual obligation, the Court finds that the publicly
disclosed information is substantially the same allegations as Relator's claim.

      Under the FCA, a qui tam relator may not recover if the relator's action relies on public
information. See 31 U.S.C. § 3730(e)(4)(A). The so-called "public disclosure bar" states that a

court "shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in either: (i) a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party"; (ii) "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation"; or (iii) "from the news media." 31 U.S.C. § 3730(e)(4)(A). The public-disclosure bar does not, however, bar actions that the Attorney General brings or actions that a private person who is "an original source of the information" brings. 31 U.S.C. § 3730(e)(4)(A).

By its terms, the original-source exception contemplates that some qui tam actions should survive the public-disclosure bar even though their allegations are "substantially the same as publicly disclosed allegations," because they involve information that "materially add[s]" to the publicly disclosed information. *United States ex rel. Reed v. KeyPoint Gov't Sol*., 923 F.3d 729, 757 (10th Cir. 2019). To qualify as an original source, a qui tam relator must demonstrate that: (i) they have "direct and independent knowledge of the information on which the allegations are based"; and (ii) they "voluntarily provided such information to the government prior to filing suit." *United States ex rel. Precision Co. v. Koch Indus., Inc.,* 871 C.2d 548, 553 (10th Cir. 1992). In other words, to recover, a qui tam relator must "bring something to the table that would add value for the government." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516 (6th Cir. 2020). To meet its burden to show that it is an original source, a qui tam relator must provide more than "unsupported, conclusory allegations". *United States ex rel. Stone v. Rockwell Int'l Corp*., 282 F.3d 787, 800 (10th Cir. 2002) (quoting *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1162 (10th Cir. 1999)).

In the Tenth Circuit the issue is not whether an explicit allegation of fraud or accusation of wrongdoing was publicly disclosed but rather "if substantially the same allegations ... were publicly disclosed." *Reed*, 923 F.3d at 745. "The operative question is whether the public disclosures were sufficient to set the government on the trail of the alleged fraud without the relator's assistance." *Id.* "In fact, the public disclosures need not allege any False Claims Act violations or even any wrongdoing; they need only disclose the material elements of the fraudulent transaction." *Id.*

As discussed, the New Mexico LHHSC held hearings regarding Defendants failure to timely process and pay provider claims in October and November 2009. Doc. 125-1 at 160-164 The New Mexico HSD ordered Defendants to pay a fine of $1.2 million and $10,000 a day until the claims system is fixed. Doc. 125-2 at 3. Furthermore, Relator described how "in October 2009, the New Mexico HSD sanctioned [Defendants] for its failure to have in place a functioning claims processing system" and when Defendants' claims adjudication did not improve, the New Mexico HSD issued "additional fines and sanctions of [Defendants] on February 16, 2011." Doc. 77 at ¶ 50-51. Congressional hearings, news of Defendants' failure to pay providers' claims, and the New Mexico HSD fine and sanctions against Defendants were publicly available. The New Mexico LHHSC held additional hearings on July 6-8, 2010 regarding whether Defendants had corrected their operating system. Doc. 125-3 at 49-50.

The Court is aware that the hearings did not address specific allegations of fraud. However, the Court finds that the material elements of the alleged fraudulent transaction was disclosed sufficiently to put the government on the trail of the alleged fraud. The Relator alleges that Defendants made false representations and material omissions to induce New Mexico to select Defendants as New Mexico's new MCO contract. Doc. 77 at ¶ 123. Specifically, the

Relator alleges that Defendants knew it could not perform the MCO contract. *Id*. at ¶ 50-51. The alleged fraud is whether Defendants had knowledge it could not perform the contract. Based on the hearings, government sanctions, and news articles, the government was more than aware that Defendants failed to perform the contract requirements. From the failure of the contract, the government could have followed the trail to determine if fraud had caused the contract violation. The Court finds that allegations made in Count I were publicly disclosed, and thus, Relator cannot recover for Count I. For the foregoing reasons, the Court dismisses Count I.

IV.    **Reverse False Claims: Count II: Violation of the Federal False Claims Act, 31 U.S.C. § 3729 (a)(1); Count III: Violation of the New Mexico Fraud Against Taxpayers Act N.M. Stat. Ann. § 44-9-1.**

Relator alleges in Count II that Defendants failed to disclose material facts, which if known, would have obligated Defendants to report overpayments of Medicaid and non-Medicaid funds. Relator alleges in Count III that Defendants knowingly did not report or return overpayments to New Mexico in violation of the FATA. Doc. 77 at ¶ 159, 160, 161.

The FCA and FATA create liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals to knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see also* N.M. Stat. Ann. § 27–14–4(E) (making it unlawful for person to conceal, avoid, or decrease an obligation to pay or transmit money or property to State related to Medicaid); N.M. Stat. Ann. § 44–9–3(A)(9) (FATA penalizes "a beneficiary of an inadvertent submission of a false claim [who] having subsequently discovered the falsity of the claim, fail[s] to disclose the false claim to the state or political subdivision within a reasonable time after

discovery"). "Section 3729(a)(1)(G) is called a reverse false claim because the action of the defendant results not in improper payment to defendant from the Government, but rather no payment to the Government when payment is otherwise obligated." *United States Barrick v. Parker-Migliorini Int'l, LLC*, 188 F. Supp. 3d 1231, 1237 (D. Utah 2016), *aff'd sub nom. United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224 (10th Cir. 2017). Simply "knowingly and improperly avoid[ing] ... an obligation to pay or transmit money or property to the Government" is enough. But, under either clause of this provision, there must exist an "obligation to pay ... money ... to the government." *Barrick*, 878 F.3d at 1230. To establish liability on a reverse false claims act cause of action a plaintiff must prove (1) there is an obligation to pay or transmit money or property, (2) to the Government, which the defendant (3) knowingly and improperly (4) avoided or decreased. *Id; see also* 31 U.S.C. § 3729(a)(1)(G).

An obligation is defined under the FCA as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). The Tenth Circuit has explained that the word "established" is "the key word in this definition" and that "a duty to pay must be formally 'established' before liability can arise under the FCA. In other words, there is no liability for obligations to pay that are merely potential or contingent." *Barrick*, 878 F.3d at 1230-31 (internal citations omitted).

Under FCA and FATA, plaintiff must show that the false claims were presented to the government knowingly. 31 U.S.C.A. § 3729 et seq.; N.M. Stat. Ann. § 27-14-1 et seq.; N.M. Stat. Ann. § 44-9-1 et seq. The FCA defines knowingly to "mean that a person, with respect to information[ ] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the

truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* at § 3729(b)(1)(A). This knowledge, unlike other aspects of alleged fraudulent behavior, "may be alleged generally." Fed. R Civ. P. 9(b). "[P]roof of specific intent to defraud" is not required. 31 U.S.C. § 3729(b)(1)(B). "Alleged generally" is less demanding than the particularity otherwise required, but these general allegations must still comply with Rule 8(a). *Iqbal*, 556 U.S. at 686–87. And Rule 8(a) requires more than "plead[ing] the bare elements" of a claim. *Id.* at 687.

### 1.  Statute of Limitation and Public Disclosure Bar

Defendants argue that the reverse fraud claims must similarly be dismissed because of the statute of limitations and public disclosure bar. Doc. 124 at 22-33; Doc. 141 at 13. Relator argues that the exact dates are in dispute and thus, the Court cannot dismiss the claim because of the statute of limitations. Doc. 142 at 1. The Court agrees with Relator. In reverse false claims, the violation did not occur at the time the MCU contract was entered. The violation occurred when Defendants had an obligation to pay the government and knowingly did not. The Complaint is unclear the exact duration Relator alleges fraud regarding overpayments. Relator alleges that from July 2009 – June 24, 2013, Defendants did not properly account for the $18 million in funds it received. Doc. 77 ¶ 152. Relator also alleges that from June 24, 2013 to December 31, 2013 failed to report overpayments in violation. *Id.* at ¶ 160. The facts related to the dates of overpayments remains unresolved, and thus precludes dismissal based on the statute of limitation or the public disclosure bar.

### 2.  Pleading Requirements under Federal Rules of Civil Procedure 8(a) and 9(b)

Defendants argue that Relator have not properly stated a cause of action because they have pled a contract dispute and not fraud. Doc. 124 at 17, 20. Defendants further argue that

Relator have not satisfied the pleading requirements under 8(a) and 9(b) because they have failed to establish scienter or materiality. *Id.* at 20. Relator argues that the Complaint properly states a cause of action and pled scienter. Doc. at 8-11. The parties primarily focus their argument on promissory fraud and false certification, which the Court does not find relevant in determining whether Relator has satisfied the pleading requirements as it relates to a reverse false claim violation. The Court finds that Relator has properly stated a cause of action under Rule 12(B)(6) and satisfied the pleading requirements under Rules 8(a) and 9(b) for Count II, Count III, and Count IV.

"[FCA] plaintiffs must ... plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)." *Universal Health Servs. Inc. v. United States*, 579 U.S. 176, 195 n.6 (2016). Rule 8(a) requires that the plaintiffs provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *See id.; see also Twombly*, 550 U.S. at 554–56, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1949–51. Fraud claims, however, must meet more stringent standards. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s purpose is to afford a defendant fair notice of a plaintiff's claims and the factual grounds supporting those claims." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (brackets and internal quotation marks omitted). Practically speaking, FCA claims comply with Rule 9(b) when they "provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1167 (10th Cir. 2010). But, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain

information in the defendant's exclusive control." *George*, 833 F.3d at 1255. "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *United States ex rel. Polukoff v. St. Mark's Hosp*., 895 F.3d 730, 745 (10th Cir. 2018). Thus, claims under the FCA need to show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme. *See, e.g., United States ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13, 29 (1st Cir.2009); *United States ex rel. Lusby v. Rolls–Royce Corp*., 570 F.3d 849, 854–55 (7th Cir.2009); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir.2009). Vague and conclusory allegations of fraud are insufficient. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

The Court finds that Defendants had an obligation to report and return overpayments to United States under the Patient Protection and Affordable Care Act of 2010 (ACA). 42 U.S.C. § 1320a - 7k(d)(l ). Under Section 6402 of the ACA, healthcare providers and suppliers that have received an overpayment must "report and return the overpayment," and "notify in writing of the reason for the overpayment." 42 U.S.C. §§ 1320a–7k(d)(2)(A)-(B). The issue before the Court is whether Defendants received an overpayment and knowingly failed to return the payment. 31 U.S.C. § 3729(a)(1)(G). Relator alleges that Defendants used their authority under Amendment No. 15 to cut funding to 15 subcontractor providers and kept the $18 million for services already delivered. Doc. 77 at ¶ 86. Relator further alleges that from June – December of 2013, Defendants failed to pay providers claims of $177,796,403 and Defendants did not report to Center for Medicare and Medicaid Services or New Mexico HSD that the Medicaid and non-Medicaid money Defendants received was not used to pay providers. *Id.* at ¶ 159. To support their allegation, Relator alleges that "[d]uring October 13-15, 2014 United submitted its annual

Reconciliation Reports to HSD for Medicaid and State non-Medicaid direct services for fiscal years 2013 and 2014. One 2013 report indicated United should have returned $674,837 to HSD in November 2013. However, United [allegedly] never returned the overpayment. The same Report represents United had only $1,133,798 remaining from the $18 million of Medicaid funds United held on June 24, 2013 to pay suspended provider claims. United [allegedly] kept this overpayment." *Id.* at ¶ 114. In other words, Relator alleges that Defendants did not pay providers, and since the providers were not paid, Defendants had knowledge that the government overpaid Defendant. Because the government overpaid, Defendant was obligated to report and return the overpayments to the government and did not do so from June 2009 – December 2013.[1] The Court finds that Relator has sufficiently pled that Defendants had an obligation to pay or transmit money to the Government, which the defendant knowingly and improperly avoided, and as such, Relator provided the specifics of a fraudulent scheme to satisfy the pleading requirements under Rule 8(a) and 9(b).

Therefore, Defendant's Motion to Dismiss Count II and Count III is DENIED.

## V.   Count IV: Violation of New Mexico Medicaid False Claims Act N.M. Stat. Ann § 27-14-1.

Relator alleges in Count IV that Defendants knowingly made, used or caused to be made or used records or statements to conceal, avoid or decrease its obligation to pay or transmit

---

[1] Our Court dismissed a complaint alleging "false certification" and "factual false claims" for lack of particularity because arelator failed to include the specific dates of the submitted false claims. *United States ex rel. Clark v. UnitedHealth Grp., Inc.,* No. CV 13-00372 MV/CG, 2016 WL 9777207, at *6 (D.N.M. Sept. 22, 2016). This Court is not persuaded that reverse false claims require the specific dates of each submitted false claim in pleadings to establish particularity. To plead a reverse false claim, Relator need not provide the actual claim instead relator must establish an obligation to pay or transmit money or property. 31 U.S.C. § 3729(a)(1)(G). Furthermore "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim," and the Court finds Defendants have properly been placed on notice. *Polukoff,* 895 F.3d 730, 745 (10th Cir. 2018)

money to New Mexico in violation of the MFCA. Doc. 77 at ¶ 166. Defendant argues that the New Mexico HSD must investigate allegations and make a written determination about whether a violation occurred. Doc. 124 at 26.

Under the MFCA, the New Mexico HSD "shall conduct an investigation of the factual allegations and legal contentions made in the complaint, shall make a written determination of whether substantial evidence that a violation has occurred and shall provide the person against which a complaint has been made a copy of the determination. If the [New Mexico HSD] determines that there is not substantial evidence that a violation has occurred, the complaint shall be dismissed." N.M. Stat. Ann. § 27-14-7. New Mexico HSD submitted their report and found that Relator "failed to provide substantial evidence to support a violation of § 27-14-7." Doc. 63 at 11.

Therefore, the Court dismisses Count IV.

## VI.   Count V: Violation of N.M. State. Ann. § 44-9-5; N.M. Stat. Ann. § 30-44-7(A)(3), 30-44-4; and N.M. Stat. Ann § 27-14-4

Relator alleges in Count V that Defendants falsely certified that it met threshold, mandatory components of expertise and ability to perform the statewide obligations of the 2009 Contract in violation of the FATA, MFCA, and the Medicaid Fraud Act (MFA). Doc. 77 at ¶ 171. The Court dismisses Count V as it relates to the MFCA and MFA for the following reasons.

### 1.   Medicaid Fraud Act

Defendants argue that claims under the MFA can only be brought by the state, and Relator agreed. Doc. 124 at 26; Doc. 128 at 19. Under MFA, "the attorney general, the district attorneys, the unit and the department have the power and authority to investigate violations of the Medicaid Fraud Act and bring actions to enforce civil remedies established in the Medicaid

Fraud Act." N.M. Stat. Ann. § 30-44-3. Because New Mexico declined to intervene and there is no private action under the MFA, the Court dismisses Count V as it relates to N.M. Stat. Ann § 30-44-3.

### 2.  Medicaid False Claims Act

As discussed, the New Mexico HSD found Relator failed to provide substantial evidence to support a claim under the MFCA, and thus, this Court dismisses this claim as it relates to MFCA. N.M. Stat. Ann. § 27-14-7

### 3.  New Mexico Fraud Against Taxpayers Act

Under the FATA, relator's action is not barred by the statute of limitation or public disclosure. NM § 44-9-12 (stating how a civil action may be brought at any time); NM Stat. Ann § 44-9-9 (discussing how only upon a motion of the attorney general or political subdivision may a court dismiss an action based on public disclosure). Therefore, the Court turns to whether Relator has established the pleading standards under Rule 8(a) and 9(b), and the Court finds that Relator has.

Defendants argue that failing to meet contractual obligations is not fraud. Doc. 124 at 17. Defendants further argue that Relator has failed to pled materiality or scienter plausibly. Doc. 124 at 19-21; Doc. 141 at 7-10. Relator argues that they have pled materiality and scienter to satisfies the standards under Rule 8(a) and 9(b). Doc. 128 at 8-11. The Court agrees that garden-variety breach of contract is not the purpose of the fraud statute. However, at the pleading stage, Relator has shown the specifics of a fraudulent scheme and provided an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.

The FATA creates liability for knowingly presenting to state employees, officers or agents "a false or fraudulent claim for payment or approval" or using a "false, misleading or

fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim", N.M.S.A. 1978 § 44-9-3(A)(1), (2); and the term "claim" "means a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state," N.M.S.A. 44-9-2(A). "FATA closely tracks the longstanding federal False Claims Act." *State ex rel. Foy v. Austin Capital Management, Ltd.*, 2015-NMSC-025, ¶ 25, 355 P.3d 1; *see also United States v. Dental Dreams, LLC*, 307 F. Supp. 3d 1224, 1240 (D.N.M. 2018) ("Under the FCA and FATA the plaintiff must show that the false claims were presented to the government knowingly"); compare N.M.S.A. 1978 § 44-9-3(A)(1), (2) with 31 U.S.C. § 3729 (creating liability for knowingly presenting "false or fraudulent claim for payment or approval" and for knowingly using "a false record or statement material to a false or fraudulent claim). New Mexico state courts have looked to federal precedent on the FCA to provide guidance on the FATA. *Id; see also Akins v. United Steel Workers of Am.*, 2010–NMSC–031, ¶ 15, 148 N.M. 442, 237 P.3d 744. This Court will do the same.

Under promissory fraud, also known as fraudulent inducement, liability attaches to "each claim submitted to the government under a contract so long as the original contract was obtained through false statements or fraudulent conduct." *In re Baycol Prods. Litig.*, 732 F.3d 869, 876 (8th Cir. 2013), *citing United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543–44, 552, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (finding contractors liable under FCA for all claims submitted under government contract obtained by collusive bidding). *Accord United States v. United Techs. Corp.*, 626 F.3d 313, 320 (6th Cir. 2011) ("False statements underlying multi-year contracts generate a stream of related invoices and cause the government to pay all of the invoices related to the contract."); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir.

2009) ("[A]lthough the Defendants' subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation, they, too, became actionable false claims." (second alteration in original) (internal quotation marks omitted)); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) ("[L]iability will attach to each claim submitted to the government under a contract, when the contract ... was originally obtained through false statements or fraudulent conduct."); *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork."); *See also United States v. Neifert–White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968) (noting FCA "was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government").

"To prove that a claim was "false or fraudulent" under a theory of promissory fraud, a plaintiff must establish: (1) that the defendant made false statements; (2) that the defendant knew that the statements were false; (3) that the false statements were material to the Government's decision to enter into a contract with the defendant, and (4) that the defendant made claims for payment under the contract that was fraudulently induced*." United States ex rel. Brooks v. Stevens-Henager Coll.,* 305 F. Supp. 3d 1279, 1296 (D. Utah 2018); *see also United States ex rel. Miller v. Weston Educ., Inc.,* 840 F.3d 494, 500 (8th Cir. 2016)*; Hendow*, 461 F.3d at 1174.

Relator alleges that that Defendants falsely represented that it had a functional system to ensure claim adjudication and compliance with billing obligations. Doc. 77 at ¶ 42-43. The Court finds that Relator has established that this statement was false because Defendants did not have a functional claim adjudication system and New Mexico HSD sanctioned Defendants for their

failure. *Id.* at ¶ 50. Defendants argue that Relator has not pled scienter plausibly because Relator was not involved in the discussions that occurred during the contract. Doc. 124 at 19. However, at this phase of pleading, knowledge, unlike other aspects of alleged fraudulent behavior, "may be alleged generally." Rule 9(b). "[P]roof of specific intent to defraud" is not required. 31 U.S.C. § 3729(b)(1)(B). The Court finds that Defendants had general knowledge that Defendants did not have a functional claim adjudication system to process providers claims. Therefore, Defendants had general knowledge that they provided a false statement when they informed the state of New Mexico that they in fact had functional claim adjudication system. Defendants further argue that Relator has not pled materiality. Doc. 124 at 20. The Court disagrees. In promissory fraud, the issue of materiality is not on whether the false statement was material for the government to pay each claim. Rather, it is whether the false statements were material to the government's decision to enter into the contract. *Brooks*, 305 F. Supp. 3d at 1296. The Court finds that the false statement about the functional claim adjudication system was material to the state of New Mexico to enter into the 2009 MCU contract because when Defendants failed to provide a functional claim adjudication system, the New Mexico HSD sanctioned Defendants. Doc. 77 at ¶ 50-53. Finally, Relator alleged that Defendants made claims for payments resulting in $1,642,337,000 from taxpayers. *Id.* at ¶ 146. The Court finds that Relator showed the specifics of a fraudulent scheme and provided an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.

Therefore, the Court will not dismiss Count V as it relates to the FATA claim.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Dismiss (**Doc. 124**) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**