UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LA FRONTERA CENTER, INC., *an Arizona Nonprofit Corporation, RELATOR, United States of America and the State of New Mexico, ex rel.*,

        Plaintiff,

v.                                                 1:15-cv-01164-KWR-JMR

UNITED BEHAVIORAL HEALTH, INC.,
UNITED HEALTHCARE INSURANCE, INC.,
OPTUMHEALTH NEW MEXICO, UNITED
HEALTHCARE INS. CO., Black and White
Corporations, and John and Jane Does 1-X,

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO UNSEAL

THIS MATTER comes before the Court on defendants United Behavioral Health Inc., United Healthcare Insurance, Inc., Optumhealth New Mexico, and United Healthcare Insurance Co.'s Motion to Unseal the Docket and Filings and to Vacate Certain Orders. Doc. 156. Relator La Frontera Center, Inc. filed a response deferring to the position of the United States and New Mexico. Doc. 157. The United States filed a Statement of Interest. Doc. 158. Defendants filed a reply. Doc. 159. New Mexico did not file a Statement of Interest.

Having reviewed the submissions and the relevant law, I hereby GRANT IN PART and DENY IN PART defendants' Motion to Unseal the Docket and Filings and to Vacate Certain Orders (Doc. 156). Documents 2 through 113 are hereby unsealed.

**I.    Background**

This case is a *qui tam* reverse false claim action brought on behalf of the United States and the State of New Mexico. Doc. 1. The relator alleges defendants violated the federal False

1

Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*; the New Mexico Fraud Against Taxpayers Act ("NMFATA"), N.M. STAT. ANN. §§ 44-9-1 through 44-9-14; the New Mexico Medicaid False Claims Act ("NMMFCA"), N.M. STAT. ANN. §§ 27-14-1 through 27-14-14; and the New Mexico Medicaid Fraud Act ("NMMFA"), N.M. STAT. ANN. §§ 30-44-1 through 30-44-8. Doc. 77.

Pursuant to the FCA, the NMFATA, and the NMMFCA, the relator is required to file the complaint under seal.[1] 31 U.S.C. § 3730(b)(2); N.M. STAT. ANN. § 44-9-5(B); N.M. STAT ANN. § 27-14-7(C). The seal remains in place for at least 60 days while the government decides whether to intervene in the suit. *Id.*

The complaint was filed on December 23, 2015. Doc. 1. Following an investigation, the United States and the State of New Mexico filed a Joint Notice of Election to Decline Intervention on February 2, 2022. Doc. 114. The Court then lifted the seal for all future filings and ordered service of the complaint on defendants. Doc. 115.

Now, defendants request that the Court unseal the entire case—making documents[2] 2 through 113 public. Doc. 156 at 5. Or, at a minimum, defendants request that an investigatory report from the New Mexico Human Services Department ("HSD") (Doc. 15) be unsealed. *Id.* at 7. In response, the relator deferred to the position of the United States and New Mexico. Doc. 157. The United States only opposes the unsealing of select documents. Doc. 158 at 1 (asking that the following remain sealed: Docs. 16, 50, 82, 85, 89, 91, 93, 95, 98, 100, 103, 108, and 110). The United States notes, without taking a position, that the State of New Mexico previously requested that the HSD report be "permanently sealed." Doc. 158 at 3 (citing Doc. 42

---

[1] The NMMFA does not contain a sealing provision. *See* N.M. STAT. ANN. §§ 30-44-1 through 30-44-8.

[2] All references to document numbers refer to the online CM/ECF docket numbers.

2

at 4).

Notably, the HSD breached this Court's seal by serving a copy of the HSD report (Doc. 15) on defendants—thus, making defendants prematurely aware of this *qui tam* action. Doc. 43 at 13. The breach was hotly litigated. Docs. 18–24, 26, 28–30, 32–34, 36, 38, 41–49, 52–72, 74–75. The Court resolved the litigation about the breach. Doc. 75. As a result of this breach, the sealed docket in this action is significantly longer than most *qui tam* actions in the same procedural posture.

## II.     Legal Framework

A *qui tam* action is a civil action brought by a private person, known as the "relator," on behalf of the relator and the United States government. *See* 31 U.S.C. § 3730(b).[3] Successful relators are awarded a percentage of the final settlement award. 31 U.S.C. § 3730(d)(1-2).

*Qui tam* actions brought under the FCA must be filed under seal. 31 U.S.C. § 3730(b)(2). During the seal period the government decides whether it will intervene in the action. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, 1510 (2019). The legislative history "indicates that the seal provision was meant to allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation." *State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 34 (2016) (citing S. Rep. No. 99-345, p. 24 (1986)). In other words, the purpose of the seal is to prevent tipping off the defendants to an investigation against them. Once the government decides whether to intervene, the complaint is unsealed and served on the defendants. 31 U.S.C. § 3730(b)(3).

---

[3] While this case was brought pursuant to four statutes, including three *qui tam* statutes, the United States is the only entity that opposes this motion. *See* Doc. 158. It does so based entirely on federal law. *Id.* As such, the Court limits its discussion to the applicable federal law.

3

Under common law, there is a strong presumption in favor of public access to documents filed with the court. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602 (1978). However, "[a] court can order documents sealed if the party moving for sealing is able to show some significant interest that outweighs the presumption in favor of open access to judicial records." *United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) (citation and quotation omitted).

### III.   Discussion

Defendants seek to unseal 112 filed documents. Doc. 156 at 3. These documents fall into three categories: (1) filings which no one opposes unsealing, (2) the HSD report, (3) the United States' motions for extension of time (Docs. 16, 50, 82, 89, 91, 93, 95, 98, 100, 103, 108).[4] The Court finds that all 112 documents should be unsealed.

#### A.   The unopposed filings should be unsealed.

The relator and the United States take no position on whether the following documents should be unsealed: Docs. 2–14, 17–49, 51–81, 83–88, 90, 92, 94, 96, 97, 99, 101, 102, 104–107, 109–113. Pursuant to Local Rule 7.1(a), failure to oppose a motion "constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(a).

The primary purpose of the *qui tam* seal is to avoid alerting defendants to a federal investigation against them while the United States decides whether to intervene. *State Farm Fire*

---

[4] The United States also requests that the relator's Second Ex Parte Motion to Partially Lift Seal (Doc. 110) remain sealed. In that motion, the relator requested that the Court partially lift the seal so that the relator and defendants could engage in arbitration. Doc. 110. The United States' request appears to be a scrivener's error. The United States identifies Document 110 as another motion for an extension of time, which it is not. *See* Doc. 158 at 2 ("[T]he United States sought 13 extensions of the seal period and intervention deadline under the FCA, 31 U.S.C. § 3730(b)(3). Docs. 16, 50, 82, 85, 89, 91, 93, 95, 98, 100, 103, 108, and 110."). The United States does not make any arguments specifically related to Document 110. Therefore, the Court treats Document 110 the same as the other filings to which the United States takes no position on unsealing.

4

*and Cas. Co.*, 580 U.S. at 34. Here, the United States already decided not to intervene. Doc. 114. And the action has been served on defendants. Docs. 116, 117. Therefore, the Court sees no reason to keep these documents sealed. *See Nixon*, 435 U.S. at 602.

The Court orders the following documents be unsealed: Docs. 2–14, 17–49, 51–81, 83–88, 90, 92, 94, 96, 97, 99, 101, 102, 104–107, 109–113.

### B. The HSD report should be unsealed.

Defendants seek to unseal the HSD report (Doc. 15). Doc. 156 at 7–8. The relator and the United States take no position on whether the report should be unsealed. Doc. 157; Doc. 158 at 6.

At one point, the State of New Mexico requested that the HSD report "be withdrawn and permanently sealed." Doc. 42 at 4 (State of New Mexico's Response to HSD's Supplemental Hearing Brief Filed in Response to Relator's Motion for Order to Show Cause). New Mexico's request was made in the context of relator's motion to impose sanctions on the HSD for breaching the *qui tam* seal. *See* Doc. 18 (relator's Motion for Order to Show Cause). Magistrate Judge Lynch's Proposed Findings and Recommended Disposition, which considered Document 42, did not recommend or comment on permanently sealing the HSD report. Doc. 43. The Court fully adopted Judge Lynch's recommendations. Doc. 49.

Separately, the Court ruled that defendants may not disseminate the HSD report, or use it in litigation, and that defendants must destroy all but one copy of the HSD report. Doc. 53; Doc. 75 at 6. However, those limitations were solely based on the *qui tam* seal and the aftermath of the seal breach. Docs. 43, 49, 53, 75. The Court has reiterated several times that the filings, including the HSD report, were only sealed until further Court order. *See, e.g.*, Doc. 51 ("The seal on the Complaint and all other filings in this action shall otherwise remain in place until

further order of this Court."); *accord* Docs. 81, 99, 101.

> Now, the United States makes the following statement:
>
> Regarding HSD Report, the United States takes no position but notes that the New Mexico Office of the Attorney General requested that the Report "be withdrawn and permanently sealed" because it would be harmful if it was ever published. Doc. 42. Moreover, Defendants were heard on their objections that the Report and documents at docket entries 43, 49, and 52 be unsealed. Docs. 56, 65, 74. The Court overruled that request. Doc. 75. Defendant fails to set forth the standard on a motion to reconsider or otherwise provide a rationale for the Court to reconsider its decision.

Doc. 158 at 6. The United States misstates New Mexico's position. This misstatement is understandable given the case's atypically complicated procedural history, which makes the status of the HSD report difficult to ascertain without carefully reviewing the entire docket—most of which is sealed. *See* Doc. 75 at 1 (comparing the matter to the Gordian Knot).

The United States overstates New Mexico's justification for requesting that the HSD report be permanently sealed. The United States claims that New Mexico requested a permanent seal "because it would be harmful if [the HSD report] was ever published." Doc. 158 at 6 (citing Doc. 42). However, New Mexico requested that the HSD report be permanently sealed because of the risk that the HSD's position, as a New Mexico agency, would be mistaken for the State of New Mexico's position. Doc. 42 at 4.[5] While this risk is certainly understandable, the distinction between the HSD's position and the State of New Mexico's positions has been made clear in this litigation. The primary purpose of the *qui tam* seal is to prevent tipping off defendants during an ongoing investigation—not to prevent easily explained, potential misunderstandings. *See State Farm Fire and Cas. Co.*, 580 U.S. at 34.

---

[5] Under the NMMFCA, the HSD is the agency that investigates and decides whether to intervene in NMMFCA cases. N.M. STAT. ANN. § 27-14-7. In contrast, under the NMFATA, the State of New Mexico or a political subdivision, investigates related claims. N.M. STAT. ANN. § 44-9-5.

The United States incorrectly asserts that this motion to unseal the HSD report should be construed as a motion to reconsider. Doc. 158 at 3. Defendants have previously requested that the HSD report be unsealed. Doc. 54; Doc. 56. The Court ruled that defendants may not disseminate the HSD report, use it in litigation, and must destroy all but one copy. Doc. 53; Doc. 75 at 6. To the Court's knowledge, defendants have complied with this ruling. The Court's order was merely an enforcement of the *qui tam* seal. Doc. 53. Now that the existence of the case is public, the concerns requiring sealing and limiting the use of the HSD report have dissipated. As such, defendants' current request to unseal the HSD report is contextually different than their previous requests to unseal the HSD report, which were made while the entire case was still under seal. The instant motion is not a motion to reconsider, nor will it be construed as such.

Further, the State of New Mexico had the opportunity to comment on defendants' motion to unseal. *See* Doc. 156-1 (Exh. A) (meet-and-confer email from relator to the United States with the attorneys from the New Mexico Office of the Attorney General carbon copied). Still, it chose not to.

At this point in the litigation, this Court sees no reason to distinguish the HSD report from the other filings on which the relator and the United States took no position. Therefore, the Court orders the HSD report (Doc. 15) be unsealed.

### C.  The government's seal extension requests should be unsealed.

The United States objects to unsealing its motions for extension of the seal period (Docs. 16, 50, 82, 85, 89, 91, 93, 95, 98, 100, 103, 108). Doc. 158 at 1. The United States argues that the FCA requires that the seal period extension requests remain sealed. *Id.* at 4–8. In the alternative, the United States argues that the extension requests contain protected information that should remain sealed. *Id.* at 8–10. The relator, in deferring to the United States' position, agrees. Doc.

157. Defendants disagree that the FCA requires that extension requests remain sealed after the United States has decided whether to intervene. Doc. 159 at 4–5. Defendants also argue that the United States fails to demonstrate that the extension requests contain protected information. *Id.* at 5–7. I agree with defendants.

      **i. The FCA does not require that extension requests remain sealed after the United States decides whether to intervene.**

The United States argues that the FCA requires that the motions to extend the seal period remain sealed. Doc. 158 at 4–8. Defendants dispute the United States' reading of the FCA. Doc. 159 at 4–5. The FCA does not require that extension requests remain sealed after the United States decides whether to intervene.

The FCA states, "[t]he complaint shall be filed in camera [and] shall remain under seal for at least 60 days." 31 U.S.C. § 3730(b)(2). After 60 days, the government may move the Court for an extension of the seal, upon a showing of good cause. 31 U.S.C. § 3730(b)(3). While the plain language of the FCA only provides for sealing of the complaint, given the purpose of the FCA, courts have consistently interpreted the seal as applying to the entire case—until the government decides whether to intervene. *See, e.g.*, *Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119, 122 (2003); *Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 932 (10th Cir. 2005).

Section 3730(b)(3) explains that "affidavits or other submissions" associated with the government's seal extension requests may also be filed *in camera*. 31 U.S.C. § 3730(b)(3). The FCA does not clarify whether such "affidavits or other submissions" must be held permanently *in camera* or whether they should be unsealed with the complaint. *See United States ex rel. Stephens v. Prabhu*, No. CV-S-92-653-LDG, 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1994) (unpublished) (stating that no provision of the FCA "directs the court to unseal the motions for

enlargement of time filed *in camera*").

The plain text of the FCA does not require that the United States' extension requests be kept under permanent seal. *See* 31 U.S.C. § 3730. The United States argues that "[t]he FCA does not authorize unsealing the United States' applications for extension—even though it specifically authorizes the unsealing of the complaint." Doc. 158 at 6. While the United States is correct that the FCA does not explicitly provide for unsealing the extension requests, it also does not require that the requests be permanently sealed. The FCA is simply silent as to whether motions for extensions of the seal period should eventually be unsealed.

The Department of Justice ("DOJ") is not entitled to agency deference for its interpretation of the FCA. The United States argues that "[b]ecause DOJ is the agency charged with enforcement of the FCA, DOJ's interpretation of the FCA on this issue is entitled to deference." Doc. 158 at 8. Defendants argue that there is no legal support for the idea that the DOJ is entitled to deference in its interpretations of the FCA. Doc. 159 at 5. As an initial matter and as defendants note, the United States fails to direct the Court to any official or formal DOJ interpretation of the FCA. *Id.* Even if it did so, the question of deference is far from clear. The United States cites just one case to support its deference claim: *Massachusetts v. Fed. Deposit Ins. Corp.*, 102 F.3d 615, 621 (1st Cir. 1996). Doc. 158 at 8. In *Massachusetts*, the First Circuit found that an agency's "established administrative practice interpreting a statute may be entitled to deference even if not yet reduced to specific regulation." *Massachusetts*, 102 F.3d at 621. But *Massachusetts* did not involve the FCA or the DOJ. While the DOJ is authorized to enforce the FCA, the United States fails to provide any authority stating that the DOJ is entitled to agency deference for its interpretation of the FCA.

The FCA does not require that extension requests remain sealed after the United States has decided whether to intervene.

### ii. The United States' extension requests do not contain protected information.

The United States argues that the extension requests contain protected information, thus, should remain sealed. Doc. 158 at 8–9. Further, it states that unsealing the motions for extension will create a chilling effect on the government, making it hesitant to disclose investigatory information in future extension requests. *Id.* Defendants respond that the extension requests likely do not contain protected information and that any risk of a chilling effect is hypothetical. Doc. 159 at 4–7. I find that the extension requests do not contain protected information.

The United States argues,

> To an experienced judge or prosecutor, the investigative activities disclosed in the seal extension motions may appear obvious or routine. But to those outside the government and the judiciary, it would be a valuable guide to how civil prosecutors and federal agents do their work. Revealing these matters to the public would benefit a multitude of defendants and potential defendants who are subject to fraud investigations, making the government's job of ferreting out and prosecuting fraud far more difficult.

Doc. 158 at 10. Defendants respond that the United States fails to demonstrate that the extension requests in this matter contain anything more than "obvious or routine" information. Doc. 159 at 5–7.

The United States moved to extend the sealing period 12 times in this case. *See* Docs. 16, 50, 82, 85, 89, 91, 93, 95, 98, 100, 103, 108. The first three motions (Docs. 16, 50, 82) do not even arguably contain investigatory information. They merely state that the United States anticipates coordinating with various organizations, which were obviously implicated in the complaint, such as the New Mexico Office of the Attorney General. Doc. 16 at 3; Doc. 50 at 3; Doc. 82 at 3.

10

The investigatory information in the subsequent motions is so vague that it cannot possibly be considered confidential. *See* Docs. 85, 89, 91, 93, 95, 98, 100, 103, 108. Using the final request as an example, the only potentially investigative paragraph in the final extension request states:

> The Office of the United States Attorney and Office of the New Mexico Attorney General are coordinating their investigative efforts and consulting with Relator's counsel. The United States received thousands of documents in response to three Civil Investigative Demands (CIDs). The United States and Relator's counsel have reviewed most of the documents responsive to the CIDs but needs additional time to complete its analysis. The United States and the State of New Mexico are considering interviewing additional witnesses, which interview are expected to occur during the next seal period.

Doc. 108 at 2. Nothing in this paragraph is remotely sensitive. *See Wolff v. Citigroup, Inc.*, 221 F. Supp. 3d 1260, 1262 (D. Colo. Nov. 2, 2016) (finding the same regarding a similar paragraph in a *qui tam* extension request).[6] Investigative steps including witness interviews, document review, and party coordination are hardly sensitive tactics. *See United States by Dep't of Defense v. CACI Intern, Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995) (unsealing *qui tam* seal extension requests because the requests contain only "routine, general investigative procedures and do not implicate specific people or provide any substantive details"). The remaining eight extension

---

[6] In *Wolff*, the United States wrote:

> The U.S. Attorney's Office for the District of Colorado ("USAO") and the Department of Justice, Civil Frauds Section, in conjunction with the FDIC–OIG, are working to investigate Relators' [i.e., Plaintiff's] allegations in the qui tam Complaint. The United States has scheduled an interview with relator and has been working with relator's counsel to set forth an investigatory plan. The government may also request documents from the Defendants. If Defendants do not produce those documents voluntarily, the United States will need to issue Civil Investigative Demands or administrative subpoenas. Once the documents are received, the government reasonably anticipates that the process of reviewing and analyzing the documents will take at least several months to complete.

*Wolff*, 221 F. Supp. at 1262. The *Wolff* Court found, "[n]othing here describes anything remotely sensitive." *Id.*

requests each contain substantially similar, or even less, investigatory information. None of the extension requests name or otherwise identify any witnesses. Third-party sources, if any exist, were never revealed. As the State of New Mexico and the United States jointly opted not to intervene (Doc. 114), their coordination in this case is not a secret. The extension requests provide no detail about the extent of their coordination. The use of civil investigative demands is explicitly authorized by statute, so the mere fact that investigative demands were made is not private information. *See* 31 U.S.C. § 3733. And while this Court can imagine an extension request that genuinely contains sensitive information, the twelve requests in this case do not.

Unsealing the seal extension requests in this case will not undermine the effective enforcement of the FCA. The United States argues that "[u]nsealing the extension requests would have a chilling effect on the future preparation of such briefs." Doc. 158 at 10. Defendants argue that such a risk is hypothetical. Doc. 159 at 6. Here, the risk of a chilling effect is attenuated by the lack of sensitive information in the extension requests. *See Wolff*, 221 F. Supp. at 1261. As the United States concedes, "this case did not involve the most highly sensitive investigative techniques." Doc. 158 at 10. Had the extension requests in this case legitimately contained sensitive information, upon careful review of the requests, the Court may have found the United States' policy argument more persuasive. *See Ryan v. Endo Pharmaceuticals, Inc.*, No. 05-cv-3450, No. 10-cv-2039, No. 11-cv-7767, 2014 WL 5364908, at *3 (E.D. Penn. Oct. 22, 2014) (unpublished) (maintaining the seal on the extension requests because they contained sensitive investigatory information). But the requests in this case clearly do not contain information that would harm the United States if disclosed.

The United States' seal extension requests do not contain protected information.

### iii. Legal Standard for Unsealing Motions to Extend the Seal Period

The United States has made the same arguments it makes here—that seal extension requests contain protected information and unsealing the request would cause a chilling effect—in numerous cases nationwide, to varying results. *United States ex rel. Rostholder v. Omnicare, Inc.*, 799 F. Supp. 2d 547, 548–49 (D.Md. July 28, 2011) (granting motion to unseal extension requests); *United States ex rel. Kammarayil v. Sterling Operations, Inc.*, No. 15-1699(BAH), 2018 WL 6839747, at *3–5 (Dec. 31, 2018) (unpublished) (partially granting motion to unseal extension requests); *Ryan*, 2014 WL 5364908, at *3 (denying motion to unseal extension requests). When deciding motions to unseal FCA seal extension requests, courts have not settled on a legal standard, and the Supreme Court and the Courts of Appeals have not provided any guidance. Based on a review of district courts, it appears that some courts apply the general test for motions to unseal, while a larger number of courts apply a unique test crafted by district courts for lifting *qui tam* seals. *See Pickard*, 733 F.3d at 1302 (applying the general test); *United States ex. rel. Coughlin v. International Business Machines Corp.*, 992 F. Supp. 137, 141 (N.D.N.Y. Jan. 15, 1998) (applying unique *qui tam* test).

Regardless of the test, the common law presumption of public access to judicial records applies. *See Nixon*, 435 U.S. at 602. The United States, however, disagrees and argues that the presumption in favor of public access to judicial records does not apply here. Doc. 158 at 8–9 (citing *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989)). In *Corbitt*, the Seventh Circuit held that the "presumption [of public access] should not apply to materials properly submitted to the court under seal." *Corbitt*, 879 F.2d at 228. The Court is not persuaded by *Corbitt* as the circumstances there are distinguishable. *Corbitt* involved sealing criminal presentence reports, which included sensitive information about defendants and victims, not a

*qui tam* seal on motions for extension of time. *Id.* at 230–32. Further, Tenth Circuit case law clearly states that the presumption of public access to judicial records still applies to motions to unseal. *Pickard*, 733 F.3d at 1302–03.

Under either the general test or the *qui tam* test for motions to unseal, the United States' extension requests should be unsealed.

### a. General Test for Motions to Unseal

The general test for unsealing judicial records is clear. *See Pickard*, 733 F.3d at 1302. There is a strong common law presumption in favor of public access to judicial records. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007). The party seeking to seal the documents must demonstrate "some significant interest that outweighs the presumption." *Pickard*, 733 F.3d at 1302 (citing *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). The interest in sealing the documents must "heavily outweigh the public interests in access." *Id.* (citing *Colony Ins. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012).

Absent guidance from the Supreme Court, the Courts of Appeals, or the legislature, some courts see no reason to apply a different legal standard to motions to unseal in FCA cases as opposed to others. *See, e.g.*, *Kammarayil*, 2018 WL 6839747, at *2–3; *United States v. Amador*, No. 2:20-cv-1840-JAD-NJK, 2022 WL 594548 (D. Nev. Feb. 25, 2022). Defendants also urge this Court to apply the general legal standard to this motion to unseal. Doc. 156 at 4.

Applying the general test for motions to unseal, the Court finds that the United States' extension request should be unsealed. As discussed *supra* section III.C.ii, the government's extension requests do not contain protected information. Therefore, the government's interest in keeping such information sealed is miniscule. *See Wolff*, 221 F. Supp. at 1262. The government has not met its burden to demonstrate a "significant interest" that "heavily outweigh[s] the public

14

interest[] in access." *Pickard*, 733 F.3d at 1302.

Under the general test, the United States' seal extension requests should be unsealed.

### b. *Qui Tam* Test for Motions to Unseal

Within the FCA context, an overwhelming number of district courts apply a balancing test that is unique to unsealing documents in *qui tam* actions—balancing the harm of disclosure with the movant's need for the information. *See, e.g.*, *Coughlin*, 992 F. Supp. at 141; *accord* Claire M. Sylvia, THE FALSE CLAIMS ACT: FRAUD AGAINST THE GOVERNMENT § 11:25 nn.4 & 5 (June 2022) (collecting cases across circuits). "Where the harm of unsealing outweighs the need for the documents, courts will deny the request for lifting the seal." *Ryan*, 2014 WL 5364908, at *2 (citing *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994)).

Seemingly, the first case to apply this legal standard was *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994)). In *Mikes*, the Southern District of New York reasoned:

> In permitting *in camera* submissions, the [FCA] necessarily invests the court with authority to preserve secrecy of such items or make them available to the parties. Such decisions may be characterized as discovery matters either directly under, or closely analogous to those considered under, FED. R. CIV. P. 26(c), which authorizes protective orders for protection of trade secrets and similar information. Resolution of disputes under Rule 26(c) is based on a pragmatic balancing of the need for and harm risked by, disclosures sought.

*Id.* In other words, the *Mikes* Court found that the legal standards that control protective orders, under Rule 26(c), also control motions to unseal in FCA actions. *Id.* Many courts have followed suit. *E.g.*, *Purcell v. Gilead Sciences, Inc.*, 415 F. Supp. 569, 578 (E.D. Penn. Nov. 15, 2019); *Ryan*, 2014 WL 5364908, at *2; *Coughlin*, 992 F. Supp. at 140–41.

The *Mikes* test should be applied against the backdrop of the strong presumption of public access to judicial records. *Rostholder*, 799 F. Supp. 2d at 548–49; *see also Pickard*, 733

15

F.3d at 1302. While some district courts have decided similar motions without commenting on the presumption of public access, I am persuaded by the courts who apply the *Mikes* test in tandem with the presumption of public access to judicial records. *Compare Ryan*, 2014 WL 5364908, at *2–3 (applying the *Mikes* test without the presumption), *with Rostholder*, 799 F. Supp. at 548–49 (applying the *Mikes* test with the presumption). In the Rule 26(c) protective order context, which the *Mikes* test is based on, the presumption of public access does not apply because protective orders cover discovery, not judicial records. *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("the public has no constitutional, statutory (rule-based), or common-law right of access to *unfiled* discovery"). But here, the government's extension requests are squarely part of the judicial record. *Kammarayil*, 2018 WL 6839747, at *5 (holding that government seal extension requests are judicial records). The Tenth Circuit has clearly stated that the presumption of public access applies to sealed judicial records. *See Pickard*, 733 F.3d at 1302. Therefore, to comply with Tenth Circuit precedent, the *Mikes* test must be applied against the backdrop of the presumption of access to public records. *See Rostholder*, 799 F. Supp. at 548–49.

Applying the *Mikes* balancing test, the United States' extension requests should be unsealed. The United States argues that defendants "have not advanced any showing of a need for access," to the extension requests. Doc. 158 at 9. Defendants respond that they need to view the extension requests to adequately evaluate potential defenses. Doc. 159 at 7. Given the presumption of public access, I agree that the extension requests should be unsealed.

The United States' interest in keeping the requests sealed is minimal. As discussed *supra* § III.C.ii, the extension requests do not contain sensitive information. The government has not shown a significant interest in keeping the requests under seal. *See Wolff*, 221 F. Supp. at 1262. Even before considering the movant's need for the documents, the United States has not

overcome the presumption of public access to judicial records. *See supra* § III.C.iii.a.

Notably, defendants need for the extension requests is also minimal. Defendants argue that they need to review the extension requests to adequately evaluate potential defenses, such as the statute of limitations and the laches defenses. Doc. 159 at 7. Yet, defendants have not explained how the information in the seal extension requests could aid them with these legal defenses. For example, it is not clear that laches is an available defense in FCA actions. *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 1755214, at *8–9 (E.D. Penn. Apr. 24, 2013) (striking laches as an affirmative defense in FCA action because laches cannot be applied against the government). *But see United States ex rel. Monahan v. Robert Wood Johnson Univ. Hosp.*, No. 02-5706 (JAG), 2009 WL 4576097 (D.N.J. Dec. 1, 2009) (finding that the laches defense may be successfully applied against the government in limited circumstances). And the statute of limitations is assessed by the date the complaint is filed, which is already public information. *United States v. Baylor Univ. Med. Ctr.*, 469 F3d 263, 267 (2d Cir. 2006). Still, in light of all of the necessary considerations, the Court sees merit in allowing defendants to evaluate the defenses for themselves. *See United States v. Creekside Hospice II, LLC,* No. 213-cv-00167-APG-PAL, 2015 WL 9581743, at *3 (D. Nev. Dec. 30, 2015) (unpublished) (unsealing *qui tam* seal extension requests to allow the defendants to evaluate potential defenses and because of the presumption of public access to records). Defendants have demonstrated a sufficient need for unsealing the extension requests, if only because the United States' interest in maintaining the seal is similarly minimal.

Under the *Mikes*, *qui tam* balancing test for unsealing judicial records, the United States' extension requests should be unsealed.

## IV.  Request to Vacate Certain Orders

Defendants further request that the Court vacate its orders limiting defendants' use of the HSD report. Doc. 156 at 1. Specifically, defendants request that the Court vacate (1) Magistrate Judge Lynch's Order (Doc. 53) directing defendants to "destroy all copies of HSD's report," and (2) Senior District Judge Vázquez's Order on Defendants' Objections and Motion to Supplement (Doc. 75) allowing defendants to retain one copy of HSD's report and ordering defendants not to "disseminate or produce the Report in additional litigation." Doc. 53 at 1; Doc. 75 at 6.

While both orders contain other provisions, defendants' sole justification for vacating these orders is so that they may freely utilize the HSD report. Given the procedural posture of this matter, I find that vacating the orders is unnecessary to accomplish defendants' goal.

As discussed *supra* section III.B, the HSD report will be unsealed. With the unsealing, the sealing parameters of Documents 53 and 75 no longer exist. Defendants may use the HSD report just as they may use any other publicly available document.

## V.  Conclusion

For the reasons stated above, I hereby GRANT IN PART and DENY IN PART defendants' Motion to Unseal the Docket and Filings and to Vacate Certain Orders (Doc. 156). The Clerk's Office is ordered to unseal documents 2 through 113. The request to vacate certain orders is denied as moot.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge