# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA and THE
STATE OF NEW MEXICO; ex rel.,
LA FRONTERA CENTER, INC., an Arizona
Nonprofit Corporation, RELATOR

        Plaintiffs,

      vs.                                1:15-cv-01164-KWR-JMR

UNITED BEHAVIORAL HEALTH, INC.,
a Foreign Corporation; UNITED
HEALTHCARE INSURANCE, INC., a
foreign corporation; OPTUMHEALTH
NEW MEXICO operating as a d/b/a of
UNITED BEHAVIORAL HEALTH, INC.,
UNITED HEALTHCARE INS. CO.; BLACK
and WHITE Corporation and JOHN and
JANE DOES I-X,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' (OptumHealth New Mexico, United Behavioral Health, Inc, and United Healthcare Insurance, Inc.) Motion for Judgment on the Pleadings (**Doc. 174**). Having reviewed the parties' pleadings and the relevant law, the Court finds that the motion is not well taken and is therefore **DENIED**.

Defendants move again to dismiss the remaining claims in this case, Counts II, III, and portions of Count V, asserting that the New Mexico Human Services Department ("HSD") report should be considered by the Court to contravene the allegations in the complaint. Defendants assert that the New Mexico HSD report absolved them of any wrongdoing, because it found that there was not substantial evidence to support a violation of NMSA 1978 § 27-14-1, New Mexico's

Medicaid False Claims Act.  But under a Rule 12(c) or 12(b)(6) standard, the Court cannot consider the substance of the HSD report to contravene the allegations in the complaint, even if the Court takes judicial notice of the report.  Defendants also assert that Plaintiff failed to show an injury to support Article III standing, as a New Mexico agency determined there was not substantial evidence of a violation of NMSA § 27-14-1.  The issue of injury is intertwined with the merits of the case and must be considered on summary judgment or at trial. Defendants' motion is therefore denied, and Defendants may raise the standing issue in their motion for summary judgment on the merits, or at trial.

## BACKGROUND

La Frontera Center, Inc, an Arizona nonprofit corporation, brings this qui tam suit under the False Claims Act (FCA), 31 U.S.C. § 3730, New Mexico Medicaid False Claims Act (MFCA), N.M. Stat. Ann. § 27-14-7, the New Mexico Fraud Against Taxpayers Act (FATA), N.M Stat. Ann. § 44-9-7, against Defendants United Behavioral Health, Inc., United Healthcare Insurance, Inc., Optumhealth New Mexico operating as a d/b/a of United Behavioral Health Inc., United Healthcare Insurance Corporation, Black and White Corporation, and Defendants John and Jane Does I-X.

Relator filed this suit under seal on December 23, 2015 (Doc. 1), and amended their complaint, under seal, on February 9, 2017 (Doc. 77). On February 2, 2022, the United States of America and the State of New Mexico filed their notice of election to decline intervention in this case. Doc. 114. The Amended Complaint for Damages Under the False Claims Act subsequently was served on Defendants on February 18, 2022.

On August 8, 2008, New Mexico Human Services Department ("HSD") and fourteen New Mexico agencies ("Collaborative") published a 2008 Request for Proposal ("RFP") for qualified

Managed Care Organizations ("MCO") to submit proposals to become New Mexico's Medicaid and non-Medicaid statewide entity to administer behavioral health and substance abuse services. Doc. 77 at ¶ 34-36. On January 22, 2009, Defendants ("United") executed a contract to become the sole Medicaid and non-Medicaid behavioral health service MCO for New Mexico. *Id*. at ¶ 36.

Relator alleges that United falsely represented that United had substantial national experience in implementing and operating successful Medicaid programs on a statewide basis and possessed essential expertise in behavioral health managed care. *Id.* at ¶ 38. Relator alleges that United represented that it had a functional system to ensure timely claim adjudication and compliances with billing obligations and polices to address and prevent fraud and abuse. *Id*. at ¶ 42-43. Relator alleges that United did not have a claims adjudication system tailored to the RFP requirements. *Id*. at ¶ 45. Relator alleges that United's claims adjudication system was incapable of adjudicating provider claims, and on October 2009 and February 16, 2011, the New Mexico HSD sanctioned United for its failure to have a functioning claims processing system. *Id*. at ¶ 50-51. Relator further alleges that United's system did not detect fraud from 2009-2013. Id. at ¶ 52.

On April 12, 2012, the New Mexico HSD and the Collaborative proposed replacing United with Centennial Care on January 1, 2014. *Id*. at ¶ 53. United agreed to enter into a Transitional Agreement to transfer membership and services to Centennial Care. *Id*. at ¶ 53. The Transitional Agreement, Amendment 11, stated that United would:

> develop and provide to the Collaborative written polices and procedures that addresses the clinical transition issues and transfer of potentially large number of members into or out of its organization and shall be submitted to HSD for review and approval. These policies and procedures shall include how the SE [United] proposes to identify members currently receiving services, within ninety (90) days of the effective date of Amendment No. 11 develop and provide to the Collaborative a detailed plan for the transition of an individual member, which includes member and provider education about the SE and the SE's process to assure any existing courses of treatment are revised as necessary;

> identify members and provide necessary data and clinical information to the Centennial Care MCOs for members switching plans, either individually or in larger numbers to avoid unnecessary delays in treatment that could be detrimental to the member.

*Id.* at ¶ 54. The 2009 MCO Contract stated that, "[u]nder no circumstances shall this Contract exceed a total of four (4) years in duration," which was set to end on June 30, 2013. *Id*. at ¶ 57. Amendment No. 11 extended the 2009 MCO Contract to December 31, 2013. *Id.* Relator alleges that Amendment No. 11 was a substantive and material revision to the 2009 MCO Contract. *Id*. at ¶ 58. Relator alleges that Amendment No. 11 added contract language that United could hold funding it owed providers for services already rendered by United subcontracted providers. *Id*. at ¶ 59.

Relator alleges that United data management system produced inaccurate, incomplete, and false data. *Id.* at ¶ 62 In December 2012 and January 2013, United conducted pre-audit summaries on 15 subcontractor providers and determined fraudulent billing practices. *Id*. at ¶ 64. New Mexico HSD hired a third-party auditor, Public Consulting Group, Inc. (PSG). *Id.* at ¶ 66. Relator alleges that United had a major role with the PSG audit. *Id*. Relator alleges that a confidential final audit report dated June 21, 2013, confirmed that United did not implement best practices for claims processing, the payment management system was not capable of timely and accurately adjudicating providers claims, and the failure lead to United knowingly overpaying 15 of its subcontracted providers. *Id*. at ¶ 69. On June 24, 2013, New Mexico HSD announced that they received credible allegations that 15 United subcontracted providers had defrauded the Medicaid program. *Id*. at ¶ 70. Relator alleges that the original PCG Audit Report contained a statement that "PCG's Case File Audit did not uncover what it would consider to be credible allegations of fraud, nor significant concerns related to consumer safety." *Id*. at ¶ 71.

On May 13, 2013, United, New Mexico HSD, and Collaborative agreed to the Professional Services Contract, Contact Amendment No. 15 to the 2009 MCO Contract. *Id*. at ¶ 75. Relator alleges that Amendment No. 15 absolved United of responsibility for its defective provider claims systems. Relator alleges that Amendment No. 15 designated United as the Recovery Audit Contractor under § 6411 of the Patient Protection and Accountable Care Act, which United would receive a percentage of any funds recovered from United's alleged overpayments. Relator further alleges that Amendment No. 15 allowed United to retain 40 percent of all state Medicaid funds recovered from United subcontracted providers accused of fraud. *Id.*

On June 24, 2013, Relator alleges that United used its authority under Amendment No. 15 to cut funding to the 15 subcontractor providers. United allegedly kept approximately $18 million for services already delivered by the 15 subcontracted providers. *Id.* at ¶ 86.

On June 27, 2013, Relator and New Mexico HSD entered into an emergency, no-bid Professional Services Contract. *Id.* at ¶ 85 Relator alleges that the contract provided for Relator to temporarily, over a six-month period, assume responsibilities for delivering services in place of United's terminated subcontracted providers. *Id*. New Mexico HSD would provide the funds to United, which would in turn disburse the funds to Relator. *Id.* Four other Arizona Providers executed identical emergency procurement contracts. *Id.*

From June – December 2013, Relator alleges that United received $538,263,082 in Medicaid funds. *Id.* at ¶ 73 Relator alleges that United withheld the funds from subcontracted providers and refused to spend money to create and implement the Transition Plan in Amendment No. 11. *Id.* at ¶ 74. Relator alleges that United underpaid or denied the Relator's and other Arizona providers' claims and that United did not report to CMS or HSD that the Medicaid and non-Medicaid money United received was not used to pay provider claims. *Id*. at ¶ 91.

On August 12, 2013, HSD and United executed Amendment No. 17, which increased the amount of State and Federal Medicaid and non-Medicaid funds paid to United. Relator alleges 87 percent of this new money was earmarked to pay providers for supplying services, but United failed to pay the providers' claims. *Id.* at ¶ 93, 98. Relator alleges United made no reasonable effort to enable its claims processing system to pay Relator and other Arizona providers and United did not supply HSD with useful management and reporting data. *Id*. at ¶ 97.

As a result, Relator alleges the following claims:

Count I: Violation of 31 U.S.C. § 3729(a)(1) – False Representation, Certification, Omission of Material Facts and Fraudulent Inducement/Promissory Fraud

Count II: Violation of the Federal False Claims Act, 31 U.S.C. § 3729 (a)(1)

Count III: Violation of the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1

Count IV: Violation of the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1

Count V: Violation of N.M. Stat. Ann. § 44-9-5; N.M. Stat. Ann. § 30-44-7(A)(3), 30-44-4; and N.M. Stat. Ann § 27-14-4.

On February 22, 2016, the New Mexico Human Services Department ("HSD") issued a report finding that Plaintiff did not provide substantial evidence to support a violation of NMSA § 27-14-7(C), New Mexico's Medicaid False Claims Act. As noted by the New Mexico Attorney General, the report was conclusory and did not cite to evidence or the record in supporting its decision. *See* Doc. 42.

Defendants filed a motion to dismiss.  The Court issued a Memorandum Opinion and Order dismissing Counts I and IV, and dismissing part of Count V.  *See* Memorandum Opinion and

Order, Doc. 146 at 1. The Court declined to dismiss Counts II and III, and portions of Count V. In Counts II and III, Plaintiff alleged that Defendants received an overpayment and knowingly failed to return the payment.  31 U.S.C. § 3729(a)(1)(G). Defendants had an obligation to report and return overpayments to the United States under the Patient Protection and Affordable Care Act of 2010. 42 U.S.C. § 1320a-7k(d)(1).  Under Section 6402 of the AFCA, healthcare providers and suppliers that have received an overpayment must "report and return the overpayment" and "notify in writing of the reason for the overpayment." 42 U.S.C. 132a-7k(d)(2)(A)-(B).  Plaintiff alleged that pursuant to Amendment No. 15, Defendants cut funding to 15 subcontractor providers and kept the $18 million for services already delivered. Doc. 77 at ¶ 86. Plaintiff also asserted that Defendants failed to pay providers' claims, and Defendants did not report to the center for Medicare and Medicaid Services or New Mexico HSD that the Medicaid money Defendants received was not used to pay providers.  *Id.* at ¶ 159. The Court found that Relator had plausibly alleged that Defendants had an obligation to pay or transmit money to the Government, which the Defendants knowingly and improperly avoided.  Doc. 146 at 25.

Under Count V, New Mexico's Fraud Against Taxpayers Act ("FATA") creates liability for knowingly presenting to state employees, officers or agents "a false or fraudulent claim for payment or approval" or using a "false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim."  NMSA § 44-9-3(A)(1), (2).  The term "claim" means "a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state."  NMSA § 44-9-2(A).  "FATA closely tracks the longstanding federal False Claims Act."  *State ex rel. Foy v. Austin Capital Management, LTD,* 2015-NMSC-025, ¶25, 355 P.3d 1.  The Court found that Plaintiff plausibly alleged a FATA claim.  Doc. 146 at 30.

Defendants now move again to dismiss Counts II, III, and the remaining portions of Count V, this time relying on the findings in the HSD report.

## DISCUSSION

## I.   <u>Standing</u>.

Defendants assert that Plaintiff lacks standing, because based on the HSD report, the victims in this case – New Mexico and the United States – do not believe they suffered an injury. In arguing there is no injury, Defendants analyze the merits and argue that the False Claims Act claims fail. The Court concludes that it cannot adjudicate this issue at this procedural juncture, as the injury analysis is intertwined with the merits of the case. The Court will defer considering this issue until the parties file summary judgment motions on the merits.

The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.' " *California v. Texas*, ––– U.S. ––––, 141 S. Ct. 2104, 2113, 210 L.Ed.2d 230 (2021) (quoting U.S. Const. Art. III, § 2). "That power includes the requirement that litigants have standing." *Id.* To have standing, a plaintiff must establish three things: (1) he suffered an "injury in fact"—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is likely the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted). In *Vermont Agency*, the Supreme Court relevantly held that *qui tam* relators bringing claims under the False Claims Act ("FCA") enjoy Article III standing even though they assert injury only to the United States. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000). More specifically, the Court held that a non-injured relator has standing when the statute "effect[ed] a partial assignment of the Government's damages claim." *Id.* at 773.

Defendants moved to dismiss for lack of standing under Rule 12(b)(1). Motions to dismiss for lack of standing are "properly brought pursuant to rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007), *quoted in Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1047 (D.N.M. 2020); *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction"). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), citing *Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citation omitted). Here, Defendants raise a factual challenge to standing, as they assert that a report produced by the New Mexico HSD controverts Plaintiff's factual allegations in its complaint, or renders those allegations "implausible."  Defendants do not assert that the report was attached to or incorporated into the complaint.

When considering evidence outside of the pleadings under Fed. R. Civ. P. 12(b)(1), the Court must convert the motion to Rule 56 if the standing issue is intertwined with the merits of the Plaintiff's case. *Holt*, 46 F.3d at 1003. "[T]he underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States,* 208 F.3d 1220, 1223 (10th Cir. 2000), *quoted in Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).

Here, it is clear that the standing inquiry is intertwined with the merits and should be considered under Rule 12(b)(6) or Rule 56.  *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6)

motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."). In arguing that there was not an injury sufficient to establish standing, Defendants argue in detail why the claims fail on the merits in light of the HSD report. Resolution of the jurisdictional question clearly requires resolution of the substantive claim. Plaintiff objected to considering evidence outside the pleadings, and Defendants have not requested the Court convert this matter under Rule 56.  Therefore, the Court will deny the Rule 12(b)(1) motion, and allow Defendants to raise standing in their motion for summary judgment on the merits, or at trial.[1]

Defendants assert that based on the HSD report, the real parties in interest – the United States and New Mexico – do not believe they were injured, because they do not believe that the claims have merit. The HSD report found that there was insufficient evidence to support a violation of NMSA § 27-14-7. In support of this argument, Defendants primarily cite to two cases.  Both cases noted that the government's position may be probative evidence of the merits of a False Claims Act claim.  *United States ex rel. Harman v. Trinity Indus. Inc.,* 872 F.3d 645, 669 (5th Cir. 2017); *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017). However, those cases were resolved either on summary judgment or after trial. To the extent Defendants seek to introduce evidence that their actions were approved by HSD, that evidence is more appropriately submitted at summary judgment on the merits or at trial. The Court rejects

---

[1] Assuming the Court were to only consider a facial challenge to standing under Rule 12(b)(6) and exclude any outside evidence, such as the HSD report, the challenge would fail. Defendants assert that Plaintiff cannot assert an injury as it fails to state a claim.  As explained in the Court's prior opinion, at this procedural juncture it has stated a plausible claim under Counts II, III, and portions of Count V. *See* Memorandum Opinion and Order, Doc. 146.  Therefore, Plaintiff has satisfied the injury requirement under a facial challenge.

Defendants' argument at this time, as explained below, neither the United States nor New Mexico have clearly taken the position that this case lacks merit.

First, the Court notes that neither the United States nor New Mexico have moved to dismiss this case. Defendants have not shown that either the United States or New Mexico believes this case should be dismissed. For example, the Fraud Against Taxpayers Act ("FATA") provides that the New Mexico attorney general may move to dismiss a FATA claim. N.M. Stat. Ann. § 44-9-6. The New Mexico attorney general has not done so. Moreover, the FCA provides that the United States may dismiss an FCA claim in certain circumstances. 31 U.S.C. § 3730(c). The United States has not moved to dismiss the FCA claim. If neither the United States nor New Mexico believe this case has merit, the record is unclear why they have not moved to dismiss it.

Second, it is not clear at this time that the New Mexico HSD report is the official position of either the United States or New Mexico. The New Mexico Attorney General took an adversarial position to the report. *See* Doc. 42. The New Mexico Attorney General expressly denied that the report was the official position of the state of New Mexico. *See* Doc. 42 at 4 ("Because the statements were made by a State agency, OAG is concerned that those statements could be construed as the official position of the State of New Mexico – the real party in interest – if the report is permitted to be used in litigation."). It also called the report "conclusory". *Id.* "The office of the Attorney General requests that the Report be withdrawn and permanently sealed." Doc. 42 at 4. The Attorney General also stated that HSD does not have the authority to act on behalf of the state. Doc. 26. Thus, it appears the New Mexico Attorney General has expressly rejected the report. Therefore, unlike in *Harman*, it is not at all "clear" at this time that the victims in this case deny that any injury occurred. Moreover, Defendants have not cited to anything in the record suggesting that the HSD report was adopted as the position of the United States.

Therefore, the Court denies Defendants' motion to dismiss for lack of standing, and Defendants may raise their standing argument in their motion for summary judgment on the merits.

## II.   **Failure to State a Claim.**

Defendants also appear to argue that the complaint fails to state a claim, as the HSD report renders Plaintiff's claims "implausible." The Court disagrees.

Defendants filed a motion for judgment on the pleadings under Rule 12(c), which follows the standard under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."). Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Defendants assert that the findings in the report render the allegations in the complaint "implausible." Doc. 174 at 22. Defendants assert that the report found that they did not wrongfully withhold money or fail to reimburse the state. Doc. 174 at 21.

Defendants have not adequately explained in their motion how the Court can properly consider New Mexico HSD's report in deciding whether the complaint fails to state a claim. Defendants have not adequately shown that any legal theory allows a party contravene the allegations of the complaint with documents or evidence outside of the complaint. Because Defendants' motion is premised on the HSD report's findings or facts rebutting or controverting the allegations in the complaint, the Court finds the motion is not well-taken, and the Court declines to dismiss the remaining claims.

Defendants suggest that the Court may take judicial notice of the facts and findings in HSD report. Even assuming that were true, the Court may only take judicial notice of the existence of the report, but may not take judicial notice of the report to prove the truth of the matters therein. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Under Federal Rule of Evidence 201, "[t]he [C]ourt ... must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such sources include public records, such as judicial and administrative filings and documents available on an agency website. *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). Here, it is not at all clear that the specific statements or findings in the report are judicially noticeable facts

that are not subject to reasonable dispute and can be accurately and readily be determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Even assuming the report is judicially noticeable, the Court's notice of a record does not presume the truth of any disputed facts contained within those records.  *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012). "The documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002), *quoted in Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *see also In re Calder,* 907 F.2d 953, 955 n. 2 (10th Cir.1990) (discussing judicial notice of the existence and contents, but not truthfulness, of publicly filed documents).

Here, Defendants request the Court assume that the findings in the report are true, and use them to contradict the allegations in the complaint to render them "implausible."  As explained above, the Court cannot take the findings in the report as true to contradict the allegations in the complaint.[2]

Defendants have not argued that the HSD report was attached to, or incorporated by reference into, the complaint.

---

[2] The Court notes that its prior consideration of the HSD report is not in conflict with this standard. In ruling on the previous motion to dismiss, the Court considered the *fact* of the filing of the HSD report, but did not assume its findings were true, in dismissing Count IV. Under Count IV, the New Mexico HSD "shall conduct an investigation of the factual allegations and legal contentions made in the complaint, shall make a written determination of whether substantial evidence that a violation has occurred and shall provide the person against which a complaint has been made a copy of the determination.  *If the [New Mexico HSD] determines that there is not substantial evidence that a violation occurred, the complaint shall be dismissed*."  N.M. Stat. Ann. § 27-14-7 (emphasis added).  The New Mexico HSD found that the Relator failed to provide substantial evidence to support a violation of NMSA § 27-14-1.  The statute is unambiguous that the complaint must be dismissed if the report is issued and the HSD finds there is no substantial evidence that a violation occurred. The Court did not assume the truthfulness of the report, but merely took note of the report's existence.

14

Therefore, the Court may not consider the HSD report to contradict the allegations in the complaint or render them "implausible" under a Rule 12(c) or (b)(6) standard.  For the reasons the Court stated in its prior opinion, Plaintiff stated a claim as to Counts II, III, and part of Count V. *See* Memorandum Opinion and Order, Doc. 146.

## CONCLUSION

At this procedural posture the Court cannot consider the New Mexico Human Services Department's report (1) to contradict the allegations in the complaint, or (2) to establish a lack of injury to support Article III standing, as the injury issue is intertwined with the merits of the complaint.  Therefore, the Court denies the motion for judgment on the pleadings.

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Judgment on the Pleadings **(Doc. 174)** is **DENIED.**


_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

15